(COMMON LAW.)

## THOMPSON *v.* GRAY.

Where R. G. agreed with the managers of a lottery to take 2,500 tickets, giving approved security on the delivery of the tickets, which were specified in a schedule, and deposited in books of 100 tickets each, thirteen of which books were received and paid for by him, and the remaining twelve were superscribed by him, with his name, in his own handwriting, and endorsed by the agent of the managers, " Purchased and to be taken by Robert Gray," and on the envelope covering the whole, " Robert Gray, 12 books;" on the second day's drawing of the lottery, one of the last designated tickets was drawn a prize of 20,000 dollars, and between the third and fourth day's drawing, R. G. tendered sufficient security, and demanded the last 1,200 tickets, and the managers refused to deliver the prize ticket; it was held that the property in the tickets changed when the selection was made and assented to, and that they remained in the possession of the vendors merely as collateral security, and that the vendee was entitled to recover the amount of the prize.

ERROR to the circuit court for the county of Alexandria.

This was an action of Trover, instituted by the defendant in error, against Jonah Thompson, agent for the Managers of the Potomac and Shenandoah Navigation Lotteries, to recover a ticket in the 2d class of said lotteries, against which had been drawn a prize of 20,000 dollars.

On the trial, evidence was offered to prove that the president and managers of the Potomac company had been created a corporation, under that corporate name; that they had been authorized by law to raise the sum of 300,000 dollars by lotteries,

and had arranged and published a scheme of a second class.

That the plaintiff below, and one Joseph Milligan, projected another scheme, which they sent in to the president and managers, accompanied by a proposition in writing, in the words and figures following:

"If this scheme is adopted, we engage to take 2,500 tickets each, in the 2d class of the P. and S. Navigation Lottery: Provided the ten dollar prizes we now hold, and may hereafter receive, deducting 15 per cent., shall be taken in liquidation of our joint bond; and we engage to place in the hands of Mr. Carlton all the funds we receive for new tickets, until it amounts to a sum equal to that which we now owe the company, as fast as we receive them; on the balance we shall expect the usual credit. It is understood that the discount of 5 per cent. is to be made from the above 5,000 tickets: approved security to be given on the delivery of the tickets.

(Signed)          "JOSEPH MILLIGAN.
                         "R. GRAY."

It was admitted that this scheme was approved of and adopted by the president and managers, and their own scheme was abandoned; that the proposition of the plaintiff and Milligan was accepted by them, and *became a binding contract between the parties.* Evidence was also offered to prove, that under the contract a schedule specifying the numbers of certain tickets, by books containing one hundred

each, to the extent of 2,500, selected by the plaintiff, and to be set apart for his use, had been delivered by him to the former agent of the lottery; that two of the books mentioned in the said schedule having been disposed of, or put out of the reach of the agent, another schedule was handed in by the plaintiff to the defendant, then, and at present, agent, in which two other books, containing the same number of tickets, were substituted in lieu of the two last mentioned, the schedule, in respect to the others, being the same as the first. That the plaintiff had, at different times, received 13 books, of 100 tickets each, part of those specified in the schedule, and that he had paid for the 13 books, partly in certain promissory notes, received and approved of by the agent, and partly in cash, *and had afterwards paid 108 dollars and 80 cents, on account of tickets in the 2d class, over and above the said* 13 *books.* On the requisition of the plaintiff, the defendant produced on the trial a bundle containing twelve books of tickets of one hundred each, (the residue of the numbers specified in the schedule;) and, amongst others, the ticket in the declaration mentioned. On each of which books the name of the plaintiff was superscribed in his own handwriting: and on one of them (not that containing the ticket in the declaration claimed) was endorsed in the defendant's handwriting —" Purchased and to be taken by Robert Gray." And on the envelope covering the whole twelve books in one bundle was superscribed, in the hand and figures of the defendant, the words and figures following :

" ROBERT GRAY, 12 Books "

Similar proceedings took place as to W. Milligan, to whom only a part of the tickets selected by him had been delivered.

That the drawing of the lottery was commenced on the 17th day of November, 1812, and that, on the 27th of that month, the second day's drawing, a prize of 20,000 dollars was drawn against the number in the declaration mentioned. The plaintiff also offered evidence to prove that on the 4th day of December, 1812, subsequent to the third and before the fourth day's drawing, the plaintiff tendered to the defendant a bond for the payment of          dollars, executed by himself and two sureties, who were fully sufficient for that sum, and demanded from him the 12 books of tickets which had been selected and set apart for him. To which the defendant replied, that he was ready to deliver 1,200 of any undrawn tickets, but would not deliver the high prize. The drawing of the lottery had been continued only fifteen days.

On which the counsel for the defendant below moved the court to instruct the jury,

" 1st. That it is not competent for the jury to find, from the evidence so produced as aforesaid, that the twelve books of tickets including the said prize ticket, had been, prior to the commencement of the drawing of the said lottery, appropriated by plaintiff and defendant to the satisfaction of said contract, and delivered to plaintiff under and in fulfilment of said contract, and deposited by the plaintiff with the defendant, as collateral security for the payment of the purchase money until other security should be

given, (as was contended and insisted upon by the plaintiff's counsel to the jury,") which instruction the court refused to give.

1816.

Thompson
v.
Gray.

" 2d. That the facts so given in evidence by the plaintiff, as aforesaid, do not import an absolute sale and delivery of the twelve books of tickets, including the prize ticket, but a selection and setting apart of such tickets as were to be delivered to the plaintiff, when he should comply with his contract in giving the stipulated security." Which instruction the court gave, but also directed the jury, " that such selection and setting apart, as aforesaid, was sufficient delivery to the plaintiff to vest the property of the said tickets in him upon his giving or tendering approved security, according to the terms of the contract, in a reasonable time thereafter; and that the tender of the security, as before stated, was in reasonable time.

" 3d. That the selection and laying apart of the twelve books of tickets, as aforesaid, and the said endorsements upon the said books, and upon the envelope of the same, did not vest in the plaintiff the property of said tickets, under the said contract, so as to entitle plaintiff to prizes drawn against those tickets before any security was given or offered, and whilst said tickets remained in the hands of defendant, awaiting the completion of said contract on the part of the plaintiff in respect of the stipulated security." Which instruction the court gave, but also instructed the jury, " that upon tendering the security, as before stated, if the jury should find such security to be sufficient, such selection and laying

apart of the said tickets did, under the said contract, entitle the plaintiff to all the prizes drawn by such tickets in the intermediate time between such selection and the tender of security, as aforesaid;" to which refusal and several instructions the defendant excepted, and a verdict and judgment having been rendered for the plaintiff below, the defendant in the circuit court brought the cause into this court by a writ of error.

*Jones*, for the plaintiff in error. 1. The ticket was at the risk of the vendors, and drawing the prize is equivalent to any physical change in the thing. It was not left in the hands of the vendors as collateral security, for the pledge of the ticket would have thrown upon the vendors the whole risk of the drawing of these tickets, the essence of their value consisting in the chance. On the contrary, the thing was to remain in the vendors' possession, and as their property, until a condition of the sale had been accomplished. 2. There is a repugnancy between refusing the first instruction and granting the second. The court below admit that the right of property was not *complete* in Gray, until the security stipulated ; and that, when given, it would retroactively vest the property. The title was then clearly incomplete.

*Swann*, contra. The contract was consummated and binding on both parties. Gray's proposition

a 6 *East*, Hanson v. Myer. 1 *Campbell's* N. P. R. 427. Paine v. Shadbolt.

1816.

Thompson
v.
Gray.

was accepted, some of the tickets were actually delivered; there was a payment of what may be considered as earnest. The thing sold was specifically designated by the vendors. The vendee had the right of property, and the right of possession. All he wanted was the actual possession. The thing sold may be designated in various ways.[b] Property is transferred by the contract of sale without delivery, if the article is specifically designated.[c]

*Jones*, in reply. There is a distinction between this case and the authorities relied upon by the other side. The question is, whether the contract be executory or executed. It was not executed by specifying the particular ticket; the security to be given by Gray was a condition which preserved the original executory nature of the contract. Delivery, either actual or symbolical, is essential to a sale; and neither took place here. The cases cited are of contracts self-executory, and where the parties stipulated to waive delivery.

MARSHALL, Ch. J., delivered the opinion of the court, and, after stating the facts, proceeded as follows:

The question on which the correctness of the opinions given by the circuit court depends, is this: Was the purchase and sale of the twelve books not delivered, so complete, that the tickets had become the property, and were at the risk of Robert Gray?

Feb. 27

b 2 *Black. Com.* 447.—*Salk.* 113.
c 1 *Campbell's N. P. R.* 513. Phillemore *et al.* v. Barry *et al.* *East*, 558. Hinde v Whitehouse *et al.*

1816.

Thompson
v.
Gray.

In pursuing this inquiry it becomes necessary to decide, whether the clause respecting security forms a condition *precedent*, on which the sale is made to depend, or a condition *subsequent*, the performance of which may be suspended until it shall be convenient to the vendee, or required by the vendor. It is apparent that a contract for the sale of 5,000 tickets was one of very considerable interest to the managers of the lottery. This is not only self evident from the nature of the transaction, but is also proved by the fact, that they changed the scheme of the lottery for the purpose of securing it. As the time of commencing the drawing must necessarily have depended on the sale of the tickets, it is reasonable to suppose, that, in the calculations made on this subject, they must have considered the books selected and set apart for Mr. Gray, either as sold or unsold. The endorsements on the books selected lead strongly to the opinion, that they were considered as sold. If the proposition which forms the basis of the contract be inspected, it will be perceived that the contract was intended to be entire, not divisible. The scheme of the lottery was changed, not for the purpose of inducing Gray and Milligan to take any number of tickets less than 5,000, but on their engaging to take 5,000 absolutely; and the clause respecting the security is annexed to the delivery of the tickets. The delivery of some of the books was an execution in part of an entire contract. All the circumstances show, that the obligation of the contract was complete: but the examination of these circumstances

is dispensed with by the admission on record, that it " became a binding contract between the parties."

What, then, was this binding contract ?

That the scheme proposed by Milligan and Gray should be adopted, and certain facilities of payment allowed, on their bond to the company for tickets taken in the first class. That they should, on their part, take 2,500 tickets each in the second class, and that approved security should be given on their delivery. Certainly Milligan and Gray were absolutely bound to take 2,500 tickets each. A refusal to do so would have been a breach of contract, for which they would have been responsible in damages. When the parties proceed one step further; when the vendee, in execution of this contract, selects the number of tickets he has agreed to purchase, and the vendor assents to that selection; when they are separated from the mass of tickets, and those not actually delivered are set apart and marked as the property of the vendee; what, then, is the state of the contract ? It certainly stands as if the selection had been previously made and inserted in the contract itself. An article purchased in general terms from many of the same description, if afterwards selected and set apart with the assent of the parties as the thing purchased, is as completely identified, and as completely sold, as if it had been selected previous to the sale, and specified in the contract. After this selection, the parties stood in the same relation to these tickets as if the 25 books, afterwards agreed upon, had been named in the contract as containing the numbers purchased by Gray. The

1816.

Thompson
v.
Gray.

contract, then, amounts to this : The managers agree to sell Gray 2,500 tickets, which are specified, and he agrees to give approved security for the purchase money on the delivery; in the mean time the tickets remain in possession of the vendors, who proceed to draw the lottery, without having received or required security for the whole number of tickets sold. The stipulation respecting security could not in such a case be considered as a condition precedent, on the performance of which the sale depended. Certainly, the managers could have required, and have insisted on this security; but they might waive it, without dissolving the contract. They were, themselves, the judges, whether they would consider the contract of Robert Gray, with the collateral security furnished by the possession of the tickets, as sufficient for their protection; and their conduct shows that they thought it sufficient.

The majority of the court is of opinion, that the property in the tickets changed when the selection was made and assented to; and that they remained in possession of the vendors merely as collateral security. Had the tickets been all blanks, Gray was compellable to take them.

Judgment affirmed with costs.[d]

d When commodities are sold by the bulk, for a gross price, the sale is perfect, for it is known with certainty what is sold; but if the price is regulated at the rate of so much for every piece, pound, or measure, the sale is not perfect, except only as to so much as is actually counted, weighed, or measured; for, till then, it is not known with certainty what is sold. 3 Johns. Cas. 254. Coit v. Houston. Domat. l. 1. tit. 2. s. 4. art. 7. Code Napoleon, liv.

(LOCAL LAW.)

---

3. tit. 6. ch. 1. art. 1585. 2 *Er-skine's Inst.* 480, 481. This dis-tinction is recognized by *Pothier*, who remarks, that the contract of sale is usually perfected by the agreement as to the price; and, that this rule applies where the sale is of a specific article, for a gross price. *Si id quod venierit appareat quid quale quantumve sit, & pretium, & pure venit; perfecta est emptio.* 1. 8. Dig. *de peric. & comm. R. vend.* But, if the commodity be of that description of articles, which consist *in quan-titate*, and which are sold by the weight, number, or measure, the sale is imperfect until it is weigh-ed, counted, or measured. In the first case, the goods sold are at the risk of the vendee, from the mo-ment the contract is made : in the last case, they remain at the risk of the vendor, until they are de-signated by the act of weighing, counting, or measuring. But, in both cases, the contract is so far completed from the time of its be-ing entered into, as to give the vendee a right of action for the delivery of the thing on tendering the price, and the vendor an ac-tion for the price, on tendering a delivery of the thing sold. *Con-trat de Vente,* No. 308. See also 6 *East,* 625.