SCOTT v. KING and Another.

Suit upon a written agreement for the delivery of four thousand bushels of corn on board of a canal boat—two thousand bushels to be delivered on the 20th of *August*, 1856, and two thousand bushels on the 30th of the same month. Five hundred dollars was to be paid down, 500 dollars on the 8th of *August*, 1856, and 200 dollars "upon the delivery of each load," in all, 1,400 dollars. The complaint averred that the defendant was engaged in buying corn, and possessed a warehouse, at which the corn was to be delivered on board the boat. There was no controversy about the two thousand bushels first to be delivered. It was averred that before the 30th of *August*, at the instance of the defendant, the time for the delivery of the last two thousand bushels was extended, by agreement of the parties, without fixing any day for performance; and that on the 3d of *September*, 1856, the defendant informed the plaintiffs that the last two thousand bushels was ready for delivery whenever they would send a boat (but no day was fixed for such delivery), and requested payment, which was made. General averment of performance on the part of the plaintiffs, and that on the 6th of *September*, 1856, they demanded, and were ready to receive, said two thousand bushels; but that the defendant failed, and still fails to deliver the same, nor did he have it to deliver. Answer, admitting the execution of the agreement, the payment of the money, and that the defendant was engaged in buying, &c., and averring that he delivered the first two thousand bushels; that at the time of payment in full, to-wit, *September* 3, 1856, he had on hand and ready for the plaintiffs, in his warehouse, the two thousand bushels yet at that time due upon the contract, and so informed the plaintiffs; that no arrangement as to the time of receiving the corn was made; that the corn not being called for by the plaintiffs, remained, &c., until the 6th of the same month, when it was destroyed by fire; wherefore it was impossible to put the same on board the boat; that the contract was fully performed by the defendant, except transferring the corn from the warehouse to the boat; that the property, after, &c., became and was the property of the plaintiffs, subject to their control. Demurrer, because the answer did not state facts sufficient, &c., sustained. Amended answer, admitting all the facts stated in the complaint, except the averments of performance by the plaintiffs, and averring that they did not perform, in this, that they failed to send a boat within a reasonable time, *although the corn had been set apart and measured*, and was ready to be transferred to the boat at the time of the receipt of the *full amount of the purchase-money*, and remained so set apart, &c., until the morning of the 6th of *September*, when the same, yet being in the warehouse, by reason of the want of diligence upon the part of the plaintiffs, was destroyed by fire, &c. Demurrer, for the same cause as before, sustained. *Held*, that the original answer was bad, and the amended answer good on demurrer; that the admeasurement and setting apart of the corn, and the payment in full of the sum to be paid on delivery, completed the sale; that the transfer of the corn from the warehouse to the boat, although necessary to complete performance, was waived, as necessary to a completion of the sale.

May Term,
1859.

SCOTT
v.
KING.

Friday,
May 27.

APPEAL from the *Tippecanoe* Circuit Court.

HANNA, J.—The parties made a written agreement by which *Scott* was to deliver, on board of a canal boat, four thousand bushels of shelled, merchantable corn—two thousand bushels to be delivered on the 20th of *August*, 1856, and two thousand bushels on the 30th of the same month. Five hundred dollars was paid down, 500 dollars was to be paid on the 8th of *August*, and 200 dollars was to be paid "upon the delivery of each load," in all 1,400 dollars.

The complaint averred that the defendant, *Scott*, was engaged in buying corn, &c., and was possessed of a warehouse, at which the corn was to be delivered on board of a canal boat.

There is no controversy about the two thousand bushels first to be delivered.

It is averred that before the said 30th of *August*, at the instance, &c., of *Scott*, and by verbal agreement of the parties, the time for the delivery of the last two thousand bushels, and for the payment, &c., was extended, without fixing any day, &c., for performance; and that, on the 3d day of *September*, 1856, the defendant informed the plaintiffs that the last two thousand bushels were ready for delivery whenever they would send a boat (but no day was fixed for the delivery thereof), and requested the plaintiffs to pay, &c., which the plaintiffs did.

General averment of performance on the part of the plaintiffs, and that on the 6th of said *September*, they demanded, and were ready, &c., to receive said two thousand bushels; that the defendant failed, &c., and still fails to deliver the same, nor did he have it to deliver.

The answer admitted the execution of the written agreement; the payment of the money; that he was engaged in buying, &c.; that he delivered the first two thousand bushels mentioned; that at the time of the payment of said last-named sum, to-wit, *September* 3, 1856, which was in full, he had on hand, and ready for said plaintiffs, in his warehouse, the two thousand bushels yet, at that time, due upon said contract, and that he so informed the said plaintiffs; that no arrangement as to the time of receiving said

corn was made; that said corn not being called for by said plaintiffs, remained, &c., until the 6th of said *September,* when the same, with other, &c., was destroyed by fire, wherefore, it was impossible to put the same on board of a canal boat; that said contract was, by defendant, fully performed, except transferring said corn from the said house to a boat of plaintiffs; that the property after, &c., became, and was the property of the plaintiffs, subject to their control, &c.

To this answer there was a demurrer, because the same did not state facts sufficient, &c.

The demurrer was sustained. This ruling presents the first point.

Thus far we are not informed by the pleadings, by direct averment, whether the corn was in bulk with other corn, or whether it was separated or set apart for the plaintiffs. The plaintiffs admit that they were informed by the defendant, of his readiness to perform. The defendant avers that he had on hand, and ready for the plaintiffs, said corn.

From the contract, we are left to infer that it was expected the four thousand bushels would make two boat loads; and it was thereby directly stipulated that 200 dollars was to be paid at the delivery of each load. These pleadings admit and aver, that upon the information, or notice, thus given by the defendant to the plaintiffs, they paid the said last-named 200 dollars.

We have been thus minute in these statements, because, by the acts of the parties, as stated in the pleadings, we are called upon to determine the question of the fulfillment of the contract—the question of delivery and acceptance—the question of title at the time of the disaster.

Suppose that, instead of the property having been destroyed by fire, the defendant had been suddenly, by some other casualty, driven to bankruptcy, and had made a general assignment of his property, on the 6th of *September,* for the benefit of his creditors, would this two thousand bushels of corn have passed to his assignee, or would these plaintiffs have had the right to take possession of it? If the bankrupt had been able to pay but ten cents to the

dollar, this question would have been important to the interest of the plaintiffs.

Again; suppose that after the defendant had notified the plaintiffs, and they had made payment, as averred, they had suffered the corn to remain in the warehouse, and had not demanded it; could the defendant have sold it again?

A solution of both these propositions depends, we think, upon whether the corn was in a separate parcel, so as to be distinguished and known.

If it could not be so identified as the property sold to the plaintiffs, the assignees could hold it under the assignment in the one case, and the vendor again dispose of it, in the other.

So, in the case at bar, we think that, as every pleading should be construed most strongly against the pleader, the facts averred were not sufficient to divest the vendor of title in the corn, and vest it in the vendee. There was no direct averment that the corn was in a condition to be distinguished, identified, and known. There was a readiness to perform shown, and notice to the plaintiffs of that fact, and that the plaintiffs, thereupon, did an act which they were, by the terms of the contract, to do upon the delivery of the corn, to-wit, they made payment in full. These acts would have vested the title in the vendee if the purchase had been of a specific article, as a certain horse, or certain cattle, as in the case of *Bradley* v. *Michael*, 1 Ind. R. 551. Nevertheless, there are decisions which go very far, if not the whole length, in sustaining the defense here attempted to be made. *Whitehouse* v. *Frost*, 12 East. 612.—*Damon* v. *Osborn*, 1 Pick. 476.

But we think the weight of authority is against the defendant, if his proof should but sustain this answer. *Murphy* v. *The State*, 1 Ind. R. 366, and authorities there cited. 1 Pars. on Cont. 441, and cases cited.

After the demurrer was sustained to the answer, the defendant filed an amended answer, in substance, that he admitted all the facts stated in the complaint except the averments of performance by the plaintiffs, and averred that they did not perform, in this, that they failed within a

reasonable time to send a boat, &c., for the corn, &c., al-
though said corn had been set apart and measured by said
defendant, and was ready to be transferred to canal boats,
at the time of the receipt of the full amount of the pur-
chase-money by the defendant, to-wit, &c., and remained
so set apart, &c., until the morning of the 6th of *September*,
1856, when the same, yet being in the warehouse, &c.,
by reason of the want of reasonable diligence upon the
part of the plaintiffs, was destroyed by fire, and the trans-
ferring, &c., became impossible, &c.   Wherefore, &c.

This amended answer was demurred to, and the demur-
rer sustained, on the ground that it does not state facts
sufficient, &c.

This ruling presents the remaining point to be considered
in the case.

It should be borne in mind that the complaint states that
on the 3d of *September*, the defendant notified or informed
the plaintiffs that he had the corn ready, and requested pay-
ment, which was made in full.   The answer avers that at
that time the corn was measured and set apart for the
plaintiffs.   All that remained for the defendant to do was
to transfer the corn from his warehouse (which is shown
by the pleadings to have been on the canal) on to the boat.
This, perhaps, by the terms of the contract, the plaintiffs
might have insisted upon, before they paid the remaining
200 dollars; but as they paid that 200 dollars which, by
the contract, was not due until the corn was delivered;
and as it is averred the corn had then been set apart, so
that the same could be identified and distinguished; we
cannot see why the transaction from thenceforth should
not be governed by the same rules governing the sale of
other specific articles of personal property.

In the case cited in 1 Ind. R. 551, *Michael* purchased of
*Bradley*, sixteen head of fat cattle for 400 dollars, and as
much more as they should come to at four cents a pound
when weighed at, &c.   He paid 350 dollars, took away
part, and was to pay 50 dollars more on receiving the cat-
tle, &c.   It is said that, "by the contract of purchase, the
property in the cattle passed into *Michael*," &c.   So, "by

a regular sale, without delivery, the property is so absolutely vested in the vendee, that if *A.* sells a horse to *B.* for £10, and *B.* pays him earnest, or signs a note in writing, of the bargain, and afterwards, before the delivery of the horse, or money paid, the horse dies in the vendors custody, still he is entitled to the money; because, by the contract, the property was in the vendee." Blacks. Comm., Book ii., p. 449.

Another writer says: "But when everything is done by the seller, even as to parcel of the quantity sold, to put the goods in a deliverable state, the property, and consequently the risk of the parcel, pass to the buyer; and as to so much of the entire quantity as requires further acts to be done on the part of the seller, the property and the risk remain with the seller." 2 Kent's Comm. 390.

So much, then, in reference to the sale of a specific article of personal property. The position, that when the corn, in the case at bar, was set apart, and paid for by the plaintiffs, it should be governed by the same rules, and become the property of the vendees, is, we think, sustained by the case of *Thompson* v. *Gray,* 1 Wheat. 75.—3 Curtis, 471.

In that case, it appeared that the *Potomac* company had been created a corporation, with authority to raise 300,000 dollars by lotteries, and had published a scheme, &c. *Gray* and one *Milligan* projected another scheme, which was submitted to the managers, together with a proposition, to the effect that if such scheme was adopted, they each engaged to take two thousand five hundred tickets, to be paid for in a certain manner designated, and approved security to be given on the delivery of the tickets. This scheme was approved of, and the original one abandoned; and it was admitted that the proposition was accepted, and became a binding contract between the parties. *Gray* selected two thousand five hundred tickets by delivering a schedule specifying the numbers of the tickets, &c., to the agent of the lottery. Some of the tickets having been disposed of, a second schedule was furnished by *Gray,* who received a part, to-wit, thirteen hundred tickets. The others

he did not receive. An action of trover was commenced by *Gray*, against the agent of the lottery, to recover a ticket against which a prize of 20,000 dollars was drawn, on the second day. The ticket was not one of the thirteen hundred delivered to *Gray;* but on the trial, a bundle containing twelve books of tickets, of one hundred each, was produced by the agent—being the remaining numbers named in the schedule of *Gray*—and amongst others the ticket against which the prize was drawn. On each book was the name of the plaintiff, in his own handwriting, and on the envelope of the whole was indorsed in the handwriting of the agent, the words "*Robert Gray*, 12 books." The tickets were not paid for, nor security given nor offered before the drawing took place. Chief Justice MARSAHLL, in delivering the opinion of the Court, says: "Was the purchase and sale of the twelve books, not delivered, so complete that the tickets had become the property, and were at the risk of *Gray?*" In answer to this inquiry, he says, among other things, that, "When the vendee, in execution of this contract, selects the number of tickets he has agreed to purchase, and the vendor assents to that selection, when they are separated from the mass of tickets, and those not actually delivered are set apart and marked as the property of the vendee; what then is the state of the contract? It certainly stands as if the selection had been previously made and inserted in the contract itself. An article purchased in general terms from many of the same description, if afterwards selected and set apart with the assent of the parties as the thing purchased, is as completely identified, and as completely sold, as if it had been selected previous to the sale and specified in the contract."

As to the question of security, it was decided that it was not a condition precedent, but that "the managers could have required, and have insisted on this security; but they might waive it without dissolving the contract."

It was there held that the property in the tickets changed when the selection was made and assented to.

So, in the case at bar, the contract was for "shelled, merchantable corn." It is averred that corn was measured and

set apart; and, we think, that selection was assented to by the plaintiffs by their conduct, in making full payment, and the right to require the corn to be first delivered on the boat, if such right at any time existed, was thereby waived; and the article remained at their risk.

If the general doctrine laid down in the case in 1 Wheat. is correct, that after articles are set apart they are as completely sold as if they had been selected previous to the sale, &c., then the case at bar, after the corn had been set apart, would fall within the reasoning of the same Court in a later case, where the purchasers of pork and flour in the warehouses of the vendors, in *Indiana*, took from each of the vendors a written memorandum of the sale, with a receipt for the money, and an engagement to deliver them on board of canal boats, soon after the opening of canal navigation.

These evidences of title were afterwards delivered to one *Gibson*, in *New York*, with an order indorsed thereon to said vendors to deliver the property to him. This indorsement and delivery was in consideration of the advance of money then made to said purchasers by *Gibson*, and it was held that the legal effect thereof was the transfer of the legal title and the constructive possession of the property to him. The money was advanced, in the usual course of trade, upon such warehouse documents; and the Court held that the execution and delivery of those documents, by the original vendors, transferred the property and the possession of the pork, &c., to the purchasers, and the vendors from that time held it for them as their bailees; and that, as respects the legal title, there can be no distinction between the advance made by *Gibson* and the case of an actual purchaser. *Gibson* v. *Stevens*, 8 How. 384. See, also, *Pierce* v. *Gibson*, 2 Ind. R. 408; *Mansing* v. *Turner*, 2 Johns. 13. We are of opinion that the demurrer to the amended answer should have been overruled.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

W. C. *Wilson* and G. *Gardiner*, for the appellant (1).
H. W. *Chase* and J. A. *Wilstach*, for the appellees (2).

(1) Counsel for the appellant argued as follows:

The questions involved, arise on the demurrers to the answers, original and amended, and are—

1. Whether, the purchase-money being fully paid, and the corn ready for delivery by *Scott* when called for, the property in it had passed to *King & Co.*, or remained in *Scott*, so as to make the latter responsible for its loss.

2. Whether *King & Co.*, by their want of diligence in sending for the corn, are not liable for a loss suffered, which would not have occurred if the same had been removed in reasonable time.

What is necessary to vest the property in goods sold in the vendee, is a question often made, and we think definitely settled.

In examining the point, we must not forget that there is a wide distinction between the right of property and the right of possession, for each may exist without the other. In the case under consideration, the former, alone, is to be inquired into, as a determination of that settles the question of liability in case of loss, where it happens without negligence.

The following cases are believed to be pertinent:

In *Willis* v. *Willis' Administrators*, 6 Dana, 48, an exchange of negroes had been agreed upon, though neither party had delivered the possession to the other. Yet it was held that the property passed, and the risk of loss vested accordingly.

In *Whitehouse* v. *Frost*, 12 East, 614, *A.* sold *B.* ten tuns of oil, to be drawn and measured from a cistern containing forty tuns, and paid the purchase-money. *B.* sold to *C.* on credit, and gave *C.* an order for the oil, which was presented to and accepted by *A.* *C.'s* assignees could maintain trover for the oil, and recover its value from *B.*, of course holding that the sale transferred the property from *A.* to *B.*, and from *B.* to *C.*, although it still remained to be measured; because, as the Court say, nothing remained to be done "for the purpose of ascertaining either the quantity or the price."

In 2 Johns. 13, in an action for non-delivery of beef, which had become unmerchantable after sale, the Court say: "The purchase was made in the autum of 1804, and the consideration paid the following *January*, at which time there is little or no doubt, that the beef was in good order. It remained, however, in the actual possession of the defendants until the succeeding summer; when it was found to be damaged, and on whom the loss ought to fall is now the point in dispute. The property in the beef was so far transferred, on the payment of the consideration-money, that it must be considered as remaining at the plaintiff's risk."

In *Damon* v. *Osborn*, 1 Pick. 476, suit was brought to recover twelve thousand bricks, sold by plaintiff to defendant, on the following facts, viz.: Plaintiff sold defendant twelve thousand bricks, at 4 dollars per thousand, to be received by defendant at plaintiff's brickyard, where plaintiff had some forty thousand bricks, and an agent ready to deliver the twelve thousand when called for. Defendant got eight hundred of the bricks and no more, but told the agent he would take the residue of the twelve thousand the next week. The residue were never separated from the kiln, though the agent was ready to deliver them when called for, but defendant never called for them. The language of the Court is this:

"It has been contended, however, that the plaintiff cannot recover, because he has not done all on his part to be done, namely, that he has not separated

the eleven thousand two hundred bricks from the kiln in which they were. But where the bargain and sale is complete, and the vendee does not take the goods away, an action lies for the price. Here the bargain and sale was complete by the delivery of part. Nothing more was necessary to be done on the part of the vendor, until the vendee should call for the residue. The property was in the vendee."

*Bradley* v. *Michael*, 1 Ind. R. 551, is also in point, for it was there held that where certain cattle were sold, a part taken away and paid for, and part payment made for the residue which remained in the possession of the vendor, to be delivered on payment of the balance of the purchase-money, the property in the cattle passed to the purchaser, though the right of possession was in the vendor till the balance of the purchase-money was paid.

In 2 Kent's Comm., 8th ed., p. 645, the rule of the common law is thus stated: "When the terms of sale are agreed on, and the bargain is struck, and everything that the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties, without actual payment or delivery, and the property and the risk of accident to the goods vest in the buyer." Again, at page 655 of the same volume—"We think the common law very reasonably fixes the risk where the title resides; and when the bargain is made and rendered binding by giving earnest, or by part payment, or part delivery, or by a compliance with the requisitions of the statute of frauds, the property, and with it the risk, attach to the purchaser." See, also, note 6 to above page, as well as from p. 645 to 655, inclusive.

The conclusion from these cases, would seem to be almost irresistible, that where the price is certain and the quantity certain, and nothing remains but merely to measure off and deliver the amount sold on demand by the purchaser, then the property is in the vendee and at his risk. In two of the cases cited, the goods sold were part of a larger quantity; yet the quantity sold and the price were both certain. Nothing remained to be ascertained or done except the manual delivery of the goods, which remained in the possession of the vendor at the risk of the vendee.

Apply this to the case under consideration. The quantity sold was four thousand bushels, deliverable, as the complaint charges, at the vendee's warehouse, one-half of which had been delivered; the price was 1,400 dollars, all of which was paid; and nothing remained but the actual manual delivery of the remaining corn to the vendee. At whose risk did it remain in the hands of the vendor?

If, however, it should be thought that an actual setting apart of a specific quantity and bulk of corn was necessary by *Scott* before the title could pass to *King & Co.*, then that was done, as charged in the amended answer, and we think there can be no question that by that act the title was vested in *King & Co.*, and from that time the risk was theirs. Upon this point all the authorities heretofore cited are pertinent, and we refer, in addition, to 2 Kent's Comm., pp. 492, 498; Pothier on Cont. of Sale, part 4, No. 308; *Rugg* v. *Minett*, 11 East, 209; *Crawford* v. *Smith*, 7 Dana, 59; *Hanson* v. *Meyer*, 6 East, 614; *Pierce* v. *Gibson*, 2 Ind. R. 408.

The other question, viz.: Want of diligence in sending for the corn—is a mixed one of law and fact.

The pleadings show that nearly three whole days elapsed from the time *Scott* informed *King & Co.* that the corn was ready for them, before it was destroyed.

The payment was made at *Lafayette*, and the corn was at *Granville*, in the same county. The day for receiving the corn, under the contract, had passed, when *King & Co.* were, or ought to have been ready for the same; and no pretense is made that anything prevented them from receiving it at any day they chose to send a boat; but they delayed sending until the third day, when the corn had been destroyed.

It is well to notice that nothing is claimed on the ground of *Scott's* negligence in not taking proper care of the corn.

The evidence is all contained in the pleadings and the bill of exceptions, found at the end of the transcript, which contains only the contract and its indorsements.

The trial was by the Court, and the judgment corresponded with the views of the Court on the questions of law raised by the demurrers.

(2) Counsel for the appellees submitted the following:

We do not propose to examine the authorities cited by the appellant, in detail, with a view of distinguishing them from the case presented in the record before the Court, nor yet to show how far many of them have been substantially overruled in this state. It is enough for our purpose to say, that by this contract the appellant agreed to deliver the corn on board of canal boats, and until that was done no property passed. Any merchantable corn thus delivered, would have been a compliance with this contract. It would, indeed, be a strange doctrine, to allow a warehouseman and grain dealer to set up as a defense to an action of this kind, the fact that he had more than enough corn to fill the contract. Suppose he had. No specific corn was purchased, and the appellees could not replevy the same. Suppose an execution had issued against *Scott*, or suppose he had died, would not the execution-plaintiff in the one case, and the administrator in the other, hold the corn as against the appellees. Here is a test of the ownership.

But in answer to the second point urged by the appellant, we have to say that the verbal alteration of the contract merely extended the time—nothing more. It did not change the terms of the written agreement in any other particular. The corn was to be delivered on board of canal boats—it was not to be set apart and stored.

It is, perhaps, true that had the appellant, after waiting a reasonable time for the appellees' boat, measured the corn and set it apart for the appellees and notified them of that fact, the property in the corn would have passed and been at their risk. But it would certainly be contrary to justice to measure and set apart the corn without any day being fixed for its delivery, and give no notice to the appellees, and still hold them bound by the act. We are aware of the well settled rules governing the rights of parties who purchase or sell specific articles deliverable at a particular time. Then the vendor must set aside the goods to shield himself. But no authority can be found authorizing him to do it in a case where no definite time is fixed, unless notice is given. We, therefore, conclude that the cases cited are not applicable, and that the counsel for the appellant, however much to be commended for their industry, are not entitled to be rewarded by a reversal of this case. As but two questions are argued in appellant's brief, we have treated all others as waived, and have not deemed it necessary to notice them further.