CLOUD and Others *v.* MOORMAN and Others.

Where personal property, situated in a building with other property of the same kind, is sold to one person, and the residue of the same kind is sold to another person, and delivery of it all is made to the latter person, for himself and the first purchaser, but without his knowledge, it would seem that there was a sufficient parting with the power over the property, with a view to its surrender to another, to constitute an effective delivery to the first purchaser of his part, and to pass the property to him, so as to prevent the lien of an execution, thereafter issued against the seller, from attaching upon the property so sold.

APPEAL from the *Franklin* Circuit Court.

PERKINS, J.—In 1860, one *Lewis S. Larkin* was running a flouring mill in *Metamora, Indiana.* On the 4th of *December*, of the year named, *Cloud* and *Dair*, of *Harrison, Ohio*, verbally contracted with *Larkin* for 20 tons of ship-stuff at 70 cents per hundred weight. They were, at any time, to send up canal boats, to receive the ship-stuff at the mill, and *Larkin* was to deliver it upon the boat. The purchasers were to pay for it on delivery. Ice in the canal prevented *Cloud* and *Dair* from sending up boats as soon as was expected, and, on the 1st of *January*, 1861, *Larkin* called on them for payment, and told them to send up their boats and take the stuff away. They paid him 200 dollars. *Larkin* then had over 50 tons of ship-stuff lying together, in a body, in the mill, and this was all he had there. On the third of *January*, he sold to *Chipman, Gillespie & Co.*, of *Cincinnati, Ohio*, all the stuff he had in the mill, excepting 15½ tons which he specified as having been sold, and as belonging to, *Cloud* and *Dair*, and put these last purchasers in possession of the whole, and also of the mill itself, from which he retired altogether.

On the 4th of *January*, *Chipman, Gillespie & Co.*, put one *Malin Gordon* in possession of the mill and all its contents,

Cloud and Others *v.* Moorman and Others.

and left him in possession and charge thereof. They also, on that day, notified *Holland* and *Binkley*, who had been attorneys in some cases for *Cloud* and *Dair*, that these latter gentlemen had 15½ tons of ship-stuff in the mill, at *Metamora*, which they had purchased of *Larkin*. *Holland* and *Binkley* immediately communicated the intelligence to *John Roberts*, the general agent for *Cloud* and *Dair*, in that county, in buying and forwarding produce, and he at once employed *Holland* and *Binkley* to proceed to *Metamora* and cause the stuff to be weighed and shipped. They went up, as the agent of *Cloud* and *Dair* thus appointed, on *Saturday*, the 5th of *January*, employed hands, &c., who, on the 7th of the same month, between the hours of 6 o'clock and 11 o'clock A. M. of said day, caused, in connection with the agent of *Chipman, Gillespie & Co.*, the ship-stuff belonging to *Cloud* and *Dair*, to be separated from the general mass, and placed by itself. About 8 o'clock the same day, *January* 7th, an execution against *Larkin* was delivered to the sheriff of *Franklin* county, who, in the afternoon of the same day, levied it upon the ship-stuff set apart for *Cloud* and *Dair*, as being yet the property of *Lewis S. Larkin*.

*Cloud* and *Dair* instituted this suit to recover the property, so levied on, from the sheriff, making the execution-plaintiff, also, a defendant, and were defeated below on the question of title.

In proceeding to investigate the case, we may first usefully state a few settled propositions:

1. At common law, parol contracts of sale were valid and complete, and transferred title, when the minds of the contracting parties arrived at mutual consent, without delivery of the subject-matter, or payment of the consideration. *Sutton* v. *Sears*, 10 Ind. 223. This might take place where the property was in the possession of the seller; and especially,

where the property was in the possession of a third person. Ind. Dig. p. 725.

2. But in the case of the sale of goods, where no credit was to be given, though the title passed by the contract, the seller had a lien on, and might retain possession of the goods for the purchase-money, where they were in his possession at the time of sale. *Bradly* v. *Michael,* 1 Ind. 551.

3. But such lien might be lost by surrendering the possession. Hilliard on Sales, 198, note.

4. And though the title to property could pass without delivery of possession, yet, that it might do so, it was necessary generally, that the property sold should be in a state that rendered it susceptible or capable of delivery. Ind. Dig. p. 725; *Scott* v. *King,* 12 Ind. 203. Hence, where anything remained to be done, by the seller, at the date of the contract, to put the property in readiness for delivery, the title to the property, as a general proposition, did not pass by the contract of sale, simply, and without delivery. *Ibid.*

5. To this proposition, it seems, exceptions existed. In the case of *Logan* v. *Wesmier,* 6 Moore, P. C. Cases, 116, as stated in 2 Ross' Leading Cases, vide page 96, Lord *Brougham* said the question must always be one of intention. He said the parties might agree that the title should pass, though something remained to be done by the seller before the delivery of possession; or they might agree that the title should not pass, though the possession was delivered. See, also, to this effect, Williams on Per. Prop. Top. p. 86, note 1; Smith's Mercantile Law, by H. & G. p. 482, note 2; Kent Comm. 10 ed. Top. pp. 691, 2 and 3, and notes; Chit. on Cont. 376, note 1. See the English cases on the general subject, reviewed in the late case of *Gilmore* v. *Supple,* published in 7 Am. L Reg. p. 239. See, also, notes to 1 Par. on Contracts, 435 to 440. But however this may be, we think:

6. That the title may pass by delivery, even where some-

Cloud and Others *v.* Moorman and Others.

thing remains to be done afterwards by the buyer, or seller, or both, in order to separate, or identify the particular part sold. Suppose, in the case at bar, *Larkin*, on the 1st day of *January*, 1861, had sold, at the same time, to *Cloud* and *Dair* 20 tons of the ship-stuff, and to *Chipman, Gillespie & Co.* all the remainder thereof, in his mill, and had delivered to them jointly the possession of the whole, telling them to make the division between themselves, would not the title have passed from *Larkin* to the buyers, they becoming joint-owners of the stuff purchased?

Again: Suppose, when *Larkin* sold the twenty tons to *Cloud* and *Dair*, he had delivered to them the possession of the entire mass in the mill, telling them to take out their twenty tons and return the balance to him, would not such delivery upon the sale have passed the title? See *Waldon* v. *Chase*, 37 Maine, 414; *Crofoot* v. *Bennett*, 2 Comstock, 258; *Downer* v. *Thompson*, 6 Hill, (N. Y.) 208. In the case at bar, the ship-stuff in the mill (and now in controversy in part,) was all contracted away on the third day of *January*, and the possession of it delivered to one of the purchasers. This was before the lien of the execution attached upon it. Was there a delivery of the 15½ tons to *Cloud* and *Dair?* What constitutes a delivery? It is a parting with the power over the property, with a view to its surrender to another. 1 Bou. Dict. p. 433. Was there not such in this case? And was not that delivery accepted by the purchaser through his agent? See Ind. Dig. 395; *Dearmond* v. *Dearmond*, 10 Ind. 191. The evidence in the cause tends to prove that the delivery made to *Chipman, Gillespie & Co.* was, as to the 15½ tons of the ship-stuff, made to them by *Larkin* for *Cloud* and *Dair*, and upon their promise to hold for, and deliver to them, or permit them to take that quantity pursuant to their former contract of purchase.

Now, it is held in this State, that where a promise is made

by one person to another for the benefit of a third, that third person may enforce performance of such promise by suit. *Day* v. *Patterson*, at this term; *Bird* v. *Laniers*, 7 Ind. 615. May not that principle apply in such a case as this? If so, *Larkin* could not have reclaimed the property delivered to *Chipman, Gillespie & Co.* We think, at all events, that the evidence given in the cause tended to show a delivery to *Cloud* and *Dair*, as well as to *Chipman, Gillespie & Co.*, and that the question should have been left to the jury.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for further proceedings.

*Geo. Holland* and *Chas. C. Binkly*, for the appellants.
*Wilson Monroe* and *R. M. Goodwin*, for the appellees.