Johnson, C. J'.
Since the decision of Whitehouse v. Frost, 12 East, 614, the cases bearing on the question here involved have been numerous, but by no means uniform. The tendency of the more recent cases has been to follow that case, though its correctness has been ably challenged. This tendency has arisen out of the apparent necessity of adapting the principles of the common law to the changes in the new methods adopted for the transaction of business.
The accepted principles of right and justice form the groundwork of the law of contracts. In all questions involving contract relations, the convenience and wants of business give rise to usages which become part of the contract, where it is made with reference to such usages. This is often called the expansive property of the common law, but it is rather the application of accepted principles of right and justice, as evidenced by common law, to new phases and methods in the transaction of business.
In view of the nature of this particular business, in the case at bar, and the known usage governing buyer and seller, we think it clear that, as between them, by the delivery of the order from the seller, by the purchaser to the warehouseman, and his acceptance of the same, the right to the fifty barrels of flour wras perfected in the purchaser, and that thereafter it became his property. It is true, there were one hundred barrels out of which the order was to be filled, but it was all of the same quality, and by the known usage, the only delivery to be made by the seller, was by an order on the warehouseman, winch, when presented, entitled the purchaser to separate and remove the property.
*93 No selection, properly speaking, had to be made, as all the barrels were alike, but only a counting off and separation, and in this respect it differs from those cases where it is the intention of the parties that there is to be a selection or designation out of the larger quantity. The effect of a known usage on such a transaction is settled in Steel Works v. Dewey, 37 Ohio St. 242. In. that case, Dewey, Yance & Company had a contract for a large quantity of ore, belonging to the Iron Mountain Company, to be taken from a larger quantity lying on the bank of the river. They sold to the Steel Works part of the ore so situated, and gave the purchaser an order on the Iron Mountain Company for the same, which was presented and accepted. By the terms of the contract, and by the usage of the business, purchasers were to take away their ore by boats during the year’, or the order would be canceled. Owing to ice and other causes, the ore was not taken away by the Steel Works during the year, though it was there for them in mass with the larger lot. It was held, that as between Dewey, Yance & Company and the Steel Works, and in view of the usage, the sale was completed, and the right to the ore vested in the Steel Works, without any separation from the larger mass. We think this case is decisive of the case at bar.
Wood v. McGee, 7 Ohio, pt. 2, p. 128 (169), is relied on to sustain the court below, and but for the effect of the known ■usage, the language of Judge Grimke sustains this claim. An examination of the facts of that case will show, that while the judgment is right, yet it did not necessarily depend ujlbn the principles discussed and declared by the learned judge. That was trover by Woods against McGee, a warehouseman, for the wrongful conversion of three hundred barrels of flour, which ’ he claimed to own. The facts were these: Swearinger owned fifteen hundred barrels of flour, varying in value from twenty-five to fifty cents per barrel, which was stored with McGee, a warehouseman. Out of this lot, Swearinger sold to Hutton six hundred barrels, and bn the 23d of April, gave , him an order on McGee for the same. On the same day, Hutton assigned the order to Gordon and Sidwell. Seven days thereafter, Gordon assigned to plaintiff, Woods, all his interest in *94 the oi’der and purchase. This was on May 1. The order was not presented to the warehouseman until May 21, when Woods, as assignee of Gordon’s interest, received from McGee three hundred ban’els, and Sidwell received three hundred barrels, and in each case McGee took a receipt for the amount, from the respective parties. Wood sued for the three hundred barrels delivex’ed to Sidwell, on the ground that he had purchased the same of Sidwell, prior to said delivery, through his agent, Gordon. Of this sale McGee had no notice, and it appears that Sidwell, at the time he received the flour, presented the oi’iginal order with the assignment thereon by Ilntton to himself and Gordon, and with the assignment of Gordon, only of his interest to Woods. Looking, therefore, to the ordei’, one half this flour belonged to Sidwell, when delivered to him, and the warehouseman who delivered the same to him in good faith, could not, on any principle of justice, be charged in trover in favor of an unknown purchaser, when he had strictly complied with the terms of the order showing the right in Sidwell.
The distinction between that case and the one af'bax-, is so manifest, that even conceding the correctness of the principles stated by the learned judge, independent of any usage on the subject, and it is unnecessaxy to question them, they do not control in this case.
1st. There the question was considered, unaffected by any usage, in the light of which the parties acted.
2d. in that case, the order was never presented by the holders and accepted by the warehouseman, as in this, nor does it appear that he knew of its existence, or of the assignments indoi’sed thereon, until the day when all the flour was delivered,' one half to each assignee, as directed by the order. So far, therefore, as the acceptance of the order by the warehouseman affects the question of ownei’ship, as between seller and buyei’, the cases are unlike.
3d. The flour varied in price, and therefore in marketable quality, and in all such cases, there is to be a selection before the title passes.
This opinion might be extended and perhaps made more *95 interesting by an analysis of the numerous cases on the subject both ancient and modern, but we content ourselves with a reference to some few of them, without attempting more. We hold that upon the facts found by the court, showing the well known usage of the business, it is manifest that upon the presentation and acceptance of this order, the sale was completed, and the subsequent loss of the flour, while stored at the depot must fall on the purchaser. Steel Works v. Dewey, 37 Ohio St. 242; Young v. Miles, 23 Wis. 643; Cloud v. Monman, 18 Ind. 40; Horr v. Barker, 8 Cal. 489 ; Cushing v. Breed, 14 Allen 376; Kimberly v. Patchin, 19 N. Y. 330; Waldron v. Chase, 37 Maine, 414; Chapman v. Shepard, 39 Conn. 413 ; Whitehouse v. Frost, 32 East, 614; also notes to Hurff v. Hires, 17 & 18 Am. Law Reg. 17, 161, in which the whole subject in exhaustively discussed and the cases reviewed.

Judgment reversed and cause remanded.