## LESTER v. EAST.

SALE.—*Executory Contract.*—A contract for the sale of a certain number of good, corn-fed hogs, to average a certain weight gross, to be weighed at one place and delivered at another, at or within a certain time in the future, and to be then paid for at a certain price per hundred pounds, the hogs being a lot at the time of the contract being fed by the seller, and including some to be thereafter received of another person, where the hogs were never weighed or delivered to the buyer, did not pass the title in the hogs to the purchaser.

SAME.—In a bargain and sale, the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded, without regard to the fact whether the goods are delivered to the buyer or remain in possession of the seller.

SAME.—In an executory agreement for a sale, the goods remain the property of the seller till the contract is executed.

SAME.—In the case of a sale, the buyer can claim the goods specifically, and they are at his risk.

SAME.—In the case of an executory agreement, the buyer does not become the owner of the goods, cannot claim them specifically, and they are not at his risk, and his remedy on the contract, if there be a breach of it, is confined to an action for damages.

SAME.—Whether a contract is a bargain and sale or an executory agreement for a sale, depends upon the intention of the parties, to be gathered from all the terms and stipulations of the contract, and is generally a question of fact.

SAME.—A sale of personal property may be complete, so as to pass the title, without a delivery.

From the Greene Circuit Court.

*J. R. Isenhower* and *H. Burns*, for appellant.

*McDonald & Butler, Rose & Alexander,* and *Cavins & Cavins,* for appellee.

DOWNEY, J.—Replevin by the appellee against the appellant, for a lot of one hundred and seventy-five fat hogs, of the value of fifteen hundred dollars, of which it was alleged the plaintiff was the owner and entitled to the possession, and of which the defendant had possession without right, and which he unlawfully detained from the plaintiff.

The defendant answered by a general denial. The cause was tried by a jury, and there was a general verdict for the plaintiff, with answers to several interrogatories, which had been propounded to the jury.

Motions for judgment on the special finding and for a new trial were made by the defendant and overruled by the court. There was final judgment for the plaintiff. Two errors are assigned:

1. The refusal of the court to render judgment for the defendant on the special findings of the jury.

2. The overruling of the motion for a new trial.

The plaintiff claims to be the owner of the property by purchase from one Deckard, and the defendant claims by a subsequent purchase from the same person. The following is the contract, by virtue of which the plaintiff claims the ownership of the hogs:

"TREASURER'S OFFICE, GREENE COUNTY,
"BLOOMFIELD, IND., Sept. 23d, 1873.

"Article of agreement made and entered into, this 23d day of September, 1873, between Adam Deckard, of the first part, and Hughes East, of the second part, witnesseth, that the said Deckard has this day sold to the said East seven hundred head of good, corn-fed hogs, to average two hundred and forty pounds gross, to be delivered at Switz City, weighed at H. Van Dyke's scales in Bloomfield, from November 15th to December 25th, all to be clean, merchantable hogs, no piggy sows or stags. For which said East is to pay four dollars per hundred gross, and to advance at least five dollars per head

when required, on which said Deckard is to pay twelve per cent. interest. The hogs hereby contracted being the identical lot now being fed by said Deckard, including about eighty head yet to be received of Samuel McElroy.

"Witness our hands and seals.

"ADAM DECKARD, [Seal.]
"HUGHES EAST, [Seal.]"

The special findings of the jury are as follows:

"1. Was the contract that has been introduced in evidence in this cause between East and Deckard the same contract under which East claims title to the property in controversy?

"Ans. Yes.

"2. Were the hogs sold by Deckard to East to be weighed before they were to be delivered to East?

"Ans. Yes.

"3. Were the hogs in controversy ever weighed and delivered to East by Deckard under the contract between Deckard and East?

"Ans. No.

"5. Did Deckard ever deliver the hogs in controversy to East before he sold them to Lester?

"Ans. No.

"6. Did East ever pay Deckard for the hogs in controversy?

"Ans. Yes.

"9. Who was principal and who was surety on the notes given to various parties by Deckard and East, as referred to in the evidence?

"Ans. Deckard principal and East surety.

"10. Who was the owner of and entitled to the possession of the property in controversy at the time of the commencement of this suit?

"Ans. Hughes East.

"11. Did the plaintiff, before the commencement of this suit, demand the possession of the hogs in controversy of the defendant?

"Ans. No."

It is insisted by counsel for the appellant that these special

findings show that there was no completed sale which vested the ownership of the hogs in the plaintiff; that the contract was only an executory contract for the sale and delivery of the hogs at a future date, and that no title to any particular lot of hogs, or any hogs, in fact, passed to East by virtue of the contract; that when anything remains to be done by the seller to put the property into a deliverable condition, or to identify it, or to ascertain its amount, if the price depends upon this, the title to the property does not pass to the buyer, but remains in the seller. It is further submitted that in the contract in the case under consideration there was much to be done to the property by the seller; that the contract was made on the 23d day of September for the delivery of fat hogs from November 15th to December 25th following; that it is evident that the hogs, at the time of making the contract, were what are called "stock hogs," unfatted, but were to be fatted between the date of the contract and the time of delivery; that the hogs, when ready for delivery, were to be weighed at one place and delivered at another, the two places being, as is urged, six miles apart; and that until these things were done by the seller, no property passed to the purchaser.

Counsel for the appellee contend, on the contrary, that by the force and effect of the written contract, the property in the hogs passed to the purchaser, and also that by virtue of the full payment for the hogs, and the same being ascertained, identified, and pointed out, the title would have passed without the written contract.

The jury found, in their answers to the interrogatories, the following facts:

1. That East claims title to the hogs under the written contract set out.

2. That the hogs were to be weighed before they were to be delivered to East. This, too, is in accordance with the terms of the contract.

3. That the hogs were never weighed and delivered to East by Deckard, under the contract.

4. That Deckard never delivered the hogs to East before he sold them to Lester.

These propositions, it is insisted, are inconsistent with the general verdict. The other findings are not claimed to be contrary to, or inconsistent with, the general verdict.

There is a plain difference between an actual sale and a mere executory agreement. The distinction between the two consists in this, that in a bargain and sale the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded, and without regard to the fact whether the goods are delivered to the buyer, or remain in possession of the vendor. Whereas, in the executory agreement, the goods remain the property of the vendor till the contract is executed. In the case of a sale, the vendee can claim the goods specifically, and they are at his risk. In the case of an executory agreement, he does not become the owner of the goods, cannot claim them specifically, and they are not at his risk, and his remedy on the contract, if there be a breach of it, is confined to an action for damages. Both of these contracts are equally valid, and whether any particular contract is the one or the other depends, upon the intention of the parties, to be gathered from all its terms and stipulations. The question is generally, if not always, one of fact. Whether the title to the property passes or not, depends upon the intention of the parties to the agreement.

Whether the contract in this case was a completed sale, or only an executory contract, is to be decided by the facts which existed when the contract was made, and not by what occurred at some subsequent date.

The contract was for seven hundred hogs. This action is for the recovery of the possession of one hundred and seventy-five hogs, part of the number contracted for. If the contract vested in the purchaser title to none of the hogs, then the case should have been decided against him.

Several cases in this court are cited, and we will refer to them in the first place.

In *Bradley* v. *Michael*, 1 Ind. 551, where the cattle sold

were sufficiently designated, the price agreed upon, and part of it paid, and part of the cattle delivered, it was held that the property in all the cattle passed, but the seller had a lien on the cattle not yet delivered for the residue of the agreed price, without the payment of which the purchaser had no right to the possession of them.

The case of *Murphy* v. *The State*, 1 Ind. 366, was a case where the purchaser contracted for a quart of whiskey, and it was delivered to him by the pint. It was held that only so much as was delivered was sold, and therefore there was a sale of less than a quart.

In *Williams* v. *Smith*, 7 Ind. 559, a tenant had agreed to pay as rent a third of the wheat raised "in the half bushel," and it was held that until the wheat was delivered to the landlord he had no property in it, and it was not subject to an execution against him.

In *Moffatt* v. *Green*, 9 Ind. 198, which related to the sale of cross-ties, it was said: "Where there has been a sale of goods, and, according to the terms of the contract, something remains to be done before the sale can be considered as complete, until that is done, the property does not pass to the vendee." But it was held that the counting of the ties by a third person, as provided in the contract, might be waived, and the parties rely on their own count.

*Straus* v. *Ross*, 25 Ind. 300, was a case where the seller contracted to sell and deliver to the purchaser his clip of wool, at a stipulated price per pound, part of which was paid in hand; the purchaser was to go to the house of the seller on a particular day, and the parties were then to go to the town, where the wool was to be weighed, and where the purchaser was to pay the residue of the price and receive the wool. It was held that the contract was executory, and the property in the wool did not pass.

In the case of *Henline* v. *Hall*, 4 Ind. 189, relating to the ownership of a colt, which was purchased for twenty dollars, the parties agreeing that the colt should run with the mare

until it was weaned, when it should be delivered to the purchaser, who was then to pay for it, the transaction was held to be a sale.

*Cloud* v. *Moorman*, 18 Ind. 40, was a case involving the question of delivery of the property sold, and it was held that where a lot of ship-stuff was sold, part to one purchaser and the residue to another, a delivery to one might be made for the benefit of both.

*Scott* v. *King*, 12 Ind. 203, related to a sale of corn, and it was held that as the corn had been measured, set apart, and paid for, the sale was complete. The case also decides a question as to waiver of one of the stipulations of the contract.

There are other cases in this court, not cited by counsel, bearing upon the question under consideration.

There is no doubt that a sale of personal property may be complete, so as to pass the title without a delivery. *Ramsey* v. *Kochenour*, 8 Blackf. 325; *Bradley* v. *Michael, supra; Wright* v. *Maxwell*, 9 Ind. 192; *Sherry* v. *Picken*, 10 Ind. 375. And see *Davis* v. *Murphy*, 14 Ind. 158.

So, there is no doubt that the title may pass without payment of the purchase-money, where such is the intention of the parties. This is the case in sales on credit. On the subject generally, see Story on Sales, sec. 296, *et seq.*, and Hilliard on Sales, 53, *et seq.*

Benjamin, in his work on Sales, p. 228, which evinces great research and learning, states the general rules on this subject as follows:

" When the specific goods to which the bargain is to attach are not agreed on, it is clear that the parties can only contemplate an executory agreement. If A. buys from B. ten sheep, to be delivered hereafter, or ten sheep out of a flock of fifty, whether A. is to select them, or B. is to choose which he will deliver, or any other mode of separating the ten sheep from the remainder be agreed on, it is plain that no ten sheep in the flock can have changed owners by the mere contract; that something more must be done before it can be true

that any particular sheep can be said to have ceased to belong to B., and to have become the property of A.

" But on the other hand, the goods sold may be specific, as if there be in the case supposed only ten sheep in a flock, and A. agrees to buy them all. In such case, there may remain nothing to be done to the sheep, and the bargain may be for immediate delivery, or it may be that the vendor is to have the right to shear them before delivery, or may be bound to fatten them, or furnish pasture for a certain time before the buyer takes them, or they may be sold at a certain price, by weight, or various other circumstances may occur which leave it doubtful whether the real intention of the parties is that the sale is to take effect after the sheep have been sheared, or fattened, or weighed, as the case may be, or whether the sheep are to become at once the property of the buyer, subject to the vendor's right to take the wool, or to his obligation to furnish pasturage, or to his duty to weigh them. And difficulties arise in determining such questions, not only because parties fail to manifest their intentions, but because not uncommonly they have no definite intentions, because they have not thought of the subject. When there has been no manifestation of intention, the presumption of law is that the contract is an actual sale, if the specific thing is agreed on, and it is ready for immediate delivery; but that the contract is only executory when the goods have not been specified, or if when specified, something remains to be done to them by the vendor, either to put them into a deliverable shape, or to ascertain the price. In the former case, there is no reason for imputing to the parties any intention to suspend the transfer of the property, inasmuch as the thing and the price have been mutually assented to, and nothing remains to be done. In the latter case, where something is to be done to the goods, it is presumed that they intended to make the transfer of the property dependent upon the performance of the things yet to be done, as a condition precedent. Of course, these presumptions yield to proof of a contrary intent, and it must be repeated that nothing prevents the parties from agreeing that the property

in a specific thing sold and ready for delivery, is not to pass till certain conditions are accomplished, or that the property shall pass in a thing which remains in the vendor's possession, and is not ready for delivery, as an unfinished ship, or which has not yet been weighed or measured, as a cargo of corn, in bulk, sold at a certain price per pound, or per bushel.",

The legal definition of a sale is not so difficult to determine as what rule to apply to any given state of facts. In this case, we have come to the conclusion that, upon the contract, in connection with the facts found by the jury in answer to the interrogatories, there was no sale of the hogs in question. It is evident from the contract that the hogs were not sold on a credit, but were to be paid for on delivery, and the amount which was to be paid could only be ascertained by weighing the hogs. The hogs were to be " good, corn-fed." The seller was to feed the hogs, and weigh and deliver them, at which time the purchaser was to pay for them. The case, in this respect, is scarcely as favorable to the purchaser as the case of *Straus* v. *Ross, supra.* In that case, there was no uncertainty as to the wool sold. It was the seller's clip of wool. The price per pound was agreed upon, and part of it was paid. The only things remaining to be done were the weighing and delivering of the wool and the payment therefor. It was held the property did not pass by the contract. There is some uncertainty here as to the hogs to which the contract related. The concluding sentence of the contract is, that the hogs contracted for were the identical lot then being fed by Deckard, including about eighty head yet to be received of Samuel McElroy. The purchaser was not bound, however, to accept all the hogs in the lot, for the contract says they were " all to be merchantable hogs, no piggy sows or stags." This stipulation is inconsistent with the idea that the purchaser was to take all the hogs in the lot, and introduces uncertainty into the contract as to the hogs to which it relates. Then, again, there were hogs to come from McElroy's, the identity and exact number of which do not appear. The jury found that the hogs had not been weighed or delivered, and consequently the price

could not have been paid, because it could not have been known. Had there been no uncertainty as to the hogs embraced by the contract, the title could not have passed for these reasons. The fact that the jury found that payment had been made, without saying when or anything else about it, cannot avoid the force of the other facts specially found by the jury. The tenth interrogatory and answer by the jury amount to no more than a repetition of the general verdict, which, we think, must yield to the special findings of the jury.

Although it seems unnecessary, we have looked into the bill of exceptions to ascertain how the case stands upon the evidence, and have found that, upon the evidence, the case is still more clearly in favor of the appellant.

As to the identity of the hogs sold, the evidence is uncontradicted that there were only about one hundred head of them in possession of Deckard at the time the contract was executed; thus rendering it clear that the hogs intended to be embraced in the contract were not ascertained and set apart, so that the property in them could pass by the contract.

Again, the purchaser had no right under the contract to have the hogs delivered to him until the 25th day of December, 1873, which was named as the day when the period for delivery would expire; and yet this action was commenced, and the hogs taken, on the 17th day of December, 1873.

And, again, East claimed that he had the right to pay off certain notes, on which he was the surety of Deckard, and have the amount credited to him on the price of the hogs. Deckard tendered him hogs before the expiration of the time for delivery, and offered to let him have them upon payment of the price. East did not pay the price, either in money and the notes referred to, or in any other way, but desired Deckard to let him take the hogs without thus making payment for them. To this Deckard refused to assent, and drove the hogs away and sold them to the appellant.

We do not think Deckard was bound to part with the hogs upon the mere promise of East to discharge and take up the notes of Deckard at some other time.

We think a new trial should have been granted. But having come to the conclusion that the appellant was entitled to judgment on the special findings of the jury, the case must take that course on its return to the circuit court.

The judgment is reversed, with costs, and the cause remanded,. with instructions to render judgment in favor of the defendant on the special findings.

BUSKIRK, J.—I agree that the judgment in this case must be reversed, but in my judgment the cause ought to be remanded for a new trial; and, hence, I dissent from the judgment rendered, and think a rehearing should be granted, or that the opinion should be so modified as to remand the cause for another trial.

Petition for a rehearing overruled.