Johnson, J.
If regard is had to the form and terms of this contract with Mr. Pearce, as expressing the intention of the parties, aside from the supposed legal effect of those terms, as determinable by judicial construction, there is little room for controversy.
The instrument does not purport to be the evidence of a sale of the mirror and other property, but recites that it is the exclusive property of Keber & Miller, delivered into the custody of Pearce, who agrees to hold the same as their property until paid for, in certain weekly installments; and, upon full payment, they agree to transfer all property therein to Pearce; but, on failure to pay for two weeks, the property to be delivered back in as good condition as when received, and all money paid to be forfeited as the equivalent for the use while in custody.
The terms of this agreement stipulate for the custody and use of this property, and a payment by installments of an agreed price, with the title to remain in Keber & Miller until full payment, when it should pass to Pearce.
If the express intention is to govern, this writing, at most, was but a contract for a sale upon full payment — a contract for & future sale, with a bailment of the property, until the conditions precedent to a sale are performed.
The court of common pleas, however, following the case of Murch v. Wright, 46 Ill. 48, held that the legal effect of the transaction was that of a sale and a chattel mortgage to secure the purchase-money; and not being deposited, as required by law, as a chattel mortgage, it was void as against a bona fide purchaser.
We are unable to concur in this view.
It is said in Sage v. Sleutz, 23 Ohio St. 8 : “A conditional contract of sale does not lose its executory character by a mere delivery of the property. The terms of the contract, *637 in pursuance of which the delivery is made, qualify and give, character to the act and to the subsequent possession.”
Benjamin on Sales (2 ed.) 236, states the rule thus:
“ Where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition he fulfilled, even though the goods may have been actually delivered into the possession of the buyer.”
At common law the mutual assent of the parties that one should sell and transfer to another for a money price was á binding contract of sale. If by the terms of the agreement the property in the thing sold passed immediately to the buyer, the contract was termed “ a bargain and sale of goods ;” but if the property in thé goods was to remain for the time being in the seller, and only to pass to the buyer at a future time, or on the accomplishment of certain conditions, then the contract was called an executory agreement.
As a corollary of this rule, the loss in case of an actual sale fell on the purchaser, while in case of an executoiy contract of sale it fell on the vendor.
In case of a bargain and sale, the thing which is the subject of the contract becomes the property of the buyer, without regard to the fact whether the goods be delivered or remain in the custody of the vendor, but in case of an executory contract of sale, the goods remain the property of the vendor u ntil it is executed.
One is a sale, the other a promise to sell. Both these contracts are equally valid, and whenever any dispute arises as to the true character of the agreement, the question is one of fact rather than of law — of intention rather than legal construction. If that intention is clearly and unequivocally manifested, eadit questio, the point admits of no further discussion.
As was said in Denney v. Williams, 5 Allen, 3: “ The question of transfer to, and vesting of title in, the purchaser, always involves an inquiry into the intention of the contracting parties 5 and it is to be ascertained -whether *638 their negotiations and acts are evincive of an intention on the part of the seller to relinquish, all further claim or control as owner, and on the part of the buyer to assume such control with its consequent liabilities.”
Numerous decisions, and the text of all standard authors upon the law governing sales of personal property, support this view. 2 Benjamin on Sales, chap. 1; Story on Sales, 457a, 313, sec. 1025; Chitty on Contracts, chap. 3, sec. 2; '1 Parsons on Contracts, 537, 538, note (o).
This doctrine is tersely stated by Chitty (p. 528):
“ On a sale with delivery of chattels, at a fixed price, to be paid on a certain day, but until paid the title to remain in the vendor, payment is a condition precedent, and until performance the property is not vested in the vendee. The vendor in such case, if guilty of no laches, may reclaim the chattels when the price has not been paid, even from one who has purchased them from the vendee in good faith and without notice.”
This principle is so well settled by an unbroken current of decisions, cited in the text-books, that we are relieved from extended discussion of it. Coggill v. Hartford and New Haven R. R. Co., 3 Gray, 545; Sargent v. Metcalf, 5 Ib. 304; Hotchkiss v. Hunt, 49 Maine, 219; Price v. Jones, 3 Head (Tenn.), 84; Forbes v. Marsh, 15 Conn. 384; Blanchard v. Marsh, 7 Gray, 155; Porter v. Pentengill, 12 N. H. 298; Herring v. Happock, 15 N. Y.
The text of Parsons on Contracts, while supporting this principle, adds,the vendor retains his right to the goods as against the vendee, “ but, in general, not against a bona fide purchaser from the vendee,” and cites in support Wait v. Green, 36 N. Y. 556, which has been overruled or modified by Ballard v. Burget, 40 Ib. 314, where the text from Chitty is fully sustained, and Murch v. Wright, 46 Ill. 487, which stands almost alone.
It is said the possession under such a contact, with the right to use as his own, clothes the vendee with the usual indicia of ownership, and as between the bona fide purchaser and the vendor, the latter should be estopped.
*639 As no title has passed to the vendee, he has none to confer on the bona fide purchaser.
The bailee in possession is clothed with the same apparent ownership, yet he can confer no title to a bona fide purchaser, unless the sale was in market overt. Roland v. Grundy, 5 Ohio, 292.
The converse of this rule would place goods and chattels on the same ground as commercial paper before due, instead of requiring the buyer to rely on the implied warranty of title by the vendor.
The delivery under such a contract can operate only when the contingency happens.
The vendee has only a bare right of possession, and those who claim under him, either as creditors or purchasers, can acquire no higher title.
In Cogill v. H. & N. H. R. R. Co. Bigelow, J., says:
“ Such is the necessary result of carrying into effect the intention of the parties to a conditional sale and delivery. Any other rule would be equivalent to the denial of the validity of such contracts. But they certainly violate no rule of law, nor are they contrary to sound policy. The cases above cited (4 Mass. 405 ; 17 Mass. 606; 2 Pick. 512; 4 Pick. 449; 3 Cush. 257) expressly recognize them as legal and valid contracts between the vendor, on the one hand, and the vendee and his creditors on the other. If valid to this extent, it necessarily follows that they are so for all purposes. If the property does not pass out of the vendor for one purpose, it certainly does not for another. If it remains in him at all, it is because such is the agreement of the parties, and it can not be divested by any act of the vendee until the contract is fulfilled. A bona fi.de purchaser, as well as an attaching creditor, must acquire his title through the vendee. If the latter has no title, ho can communicate none. The purchaser and the attaching creditor are, in this respect, upon the same footing. No equities can intervene to give the former a better right, as against the original vendor, than. the latter; they are i u *640 cequalijure. Neither of them has a legal title to hold the property.
“ A mere possession by the vendee carries with it no right or authority to transfer the .title. That continues in the vendor until the conditions of sale and delivery are complied with by the vendee, or are waived by the vendor. . . . In the case of a conditional sale and delivery, the title does not pass from the vendor until the condition is fulfilled. The vendor obtains no right, under such sale, to dispose of the property, but only to hold it until the terms of the contract are complied with.”
These principles are, with but few exceptions, applied to contracts like the one at bar, in all the states. Sage v. Sleutz, 23 Ohio St. 8; Reed v. Upton, 10 Pick. 522; Kohler v. Hayes, 41 Cal. 455; Lester v. East, 49 Ind. 588; Kunter v. Warner, 1 Wis. 141; Currier v. Knapp, 117 Mass. 324; Christian v. Bunker, 38 Tex. 234; Ballard v. Burgett, 40 N. Y. 316; Austin v. Dye, 46 N. Y. 500; Dunlap v. Gleason, 16 Mich. 158.
"While the court will look to the terms of the contract to ascertain the intention of the parties as to whether it was a sale or a contract for a sale, and carry out that intention, yet, as possession gives apparent ownership, the burden of proof rests upon the vendor to rebut the presumption that arises from such possession, by showing the actual intention of the parties. Riddle v. Varnum, 20 Pick. 283; Benjamin on Sales, sec. 311.
The case of Murch v. Wright, 46 Ill. 487, is relied on against the view here taken. That case, while it sustains the plaintiff in error, is against the well-settled doctrines of the common law, and is unsupported by all the current of well-considered cases.
That case, as well as Wait v. Green, 36 N. Y., and Vaughn v. Ricketts, Ky. Ct. Appeals, 1874, are based on a construction of the contract clearly not warranted in the case at bar. It was held that the title passed, but that it was a conditional sale, subject to be defeated by non-payment, and hence a bona fide purchaser could acquire a good title. It *641 was thought that to treat such a contract as executory, would be in conflict with the registry laws, and so against public policy. It was assumed in Murch v. Wright that the contract was a subterfuge to evade the registry law. The court thus set aside the real intention of the parties, and made for them by construction a new and difierent contract. It is said such contracts are against public policy, and calculated to defeat the objects intended by the chattel mortgage statute.
This is an argument more properly addressed to the legislature than to the court, especially after such contracts-have been regarded as valid at common law from its earliest history.
Upon this point we adopt the clear statement of the law,, by Bigelow, J., in 3 Gray, supra:
“ It is urged, and this we suppose to be the main argument on which the contrary doctrine is founded, that as-possession of personal property is prima facie evidence of title, it would furnish fraudulent parties with the means of defrauding honest purchasers, to intrust them with the apparent ownership of property, while the real title is allowed to remain in a third party, who can reclaim it at pleasure. If a vendor, by collusion with his vendee, entered into the contract and annexed the conditions, for the purpose of enabling the latter to obtain a false credit, or to impose on innocent parties, by means of the property placed in his possession, the argument would be decisive. In such case, the vendor, being a party to a fraud, would be estopped to set up any title to the property, and creditors, as well.as innocent purchasers of the vend.ee, might well claim to hold it, on the ground that it was placed in his possession for a fraudulent purchase. But when the contract of sale is entered into in good faith, for the purpose of enabling the vendor to realize his purchase-money, or obtain security for it, in conformity with the original terms of the bargain, the argument ab inconvenienti is without any foundation in principle or authority. The general rule of the common law has. *642 always been that a man who has no authority to sell, can not, by making a sale, transfer the property to another. Ohitty on Contracts (8 Amer. eel.), 844. Except in cases of sales in market overt, which do not exist in this commonwealth, possession, of itself, confers no authority to sell. A lessee of chattels, or a bailee for a special purpose, can pass no title to a vendee, without authority from the lessor or bailor; and yet the property is intrusted to their possession, as apparent owners, in the same manner as to a vendee under a conditional sale. Besides, there is no good reason or equity in placing the burden of a fraudulent sale by a vendee in violation of the condition on which he received the property, upon a bona fide vendor, rather than upon a bona fide purchaser. On the contrary, if either is to lose by his fraudulent act, it should be the latter, who has dealt with a party having no authority, instead of the former, who relies upon a valid subsisting contact as the foundation of his claim. It is the duty of the purchaser to inquire and see that his vendor has a good title to the property which he undertakes to sell. These views are supported by the authorities.”
In holding that the judgment of the district court in reversing the common pleas was correct, we have not anticipated, much less considered, the equities of a bona fide purchaser from the vendee under this contract, where there has been part payment, as affecting the damages, which the vendor is entitled to recover. ¥e confine ourselves to the proposition that this was a contract for a sale, by which payment of the installments was a condition precedent to a complete sale and transfer of title.
What are the rights and equities of the vendee, or his bona fide vendee, in case of default, after part payment, under the forfeiture clause of this contract, are questions not properly before us.
The equities of such a bona fide purchaser, in possession, in case of part performance by his vendor, treating the agreement as an executory contract of sale, must' be left *643 to be determined when a proper ease is made. See Day v. Bassett, 102 Mass. 455; Currier v. Knapp, 117 Mass. 324.
It is assigned as error that the court erred in not sustaining the objection to the form in which the plaintiffs sue. The allegation of the petition is, that the plaintiffs “ are a ■firm doing business within the State of Ohio.”
The court did not sustain the objection, and the defendant, without excepting to this ruling, answered over, and the case was heard on its merits.
It is now too late to raise this question.

Judgment affirmed and cause remanded.