## LUMLEY et al. v. MILLER et al.

Where no motion to strike out a bill of exceptions for want of an indorsement, showing that it was filed in the office of the circuit court as a bill of exceptions, was made in the trial court or on appeal, the court on appeal will treat the document purporting to be the bill of ex· ceptions as such.

Under Rev. Code Civ. Proc. § 244, providing that an issue of fact for the recovery of specific personal property must be tried by jury, unless waived as provided in section 275, the parties in claim and de- delivery are entitled to a jury trial.

A stipulation by parties in claim and delivery, entered into at the close of the evidence and after both parties had moved for a directed verdict on specified grounds, which recites that no question will be raised that a general verdict was not submitted to the jury on all the issues, and that the court may submit only the question of the value of the property and determine the other questions as those of law, does not authorize the court to make findings of fact and conclusions of law after instructing the jury to find the value of the property, but the

court is limited to a decision of the motions for directed verdict; the stipulation not amounting to a waiver of trial by jury within Rev. Code Civ. Proc. § 275.

A bank advanced to the seller, in an executory contract for the sale of cattle, the price, and received the cattle in pledge and shipped them to the buyer, attaching to the bill of lading a draft for the price. The buyer refused to pay the draft, and, on delivery to him being refused, he sued the bank and the carrier in claim and delivery. Judgment was rendered against him, and he subsequently tendered to the bank the price, which it refused, and subsequently disposed of the property. **Held,** that the tender by the buyer did not affect a transfer of the property to him nor give him a right to the possession thereof, but at most gave him the right to sue the bank for failure to deliver.

Under Rev. Code Civ. Proc. § 568, providing that an action is pending from the time of its commencement to its final determination on appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied, an action of claim and delivery, by a buyer against the carrier and a bank which had advanced the price to the seller, resulting in a judgment against the buyer from which no appeal has been taken, defeats a subsequent action in claim and delivery by him against a third person who bought the property from the bank at a sale authorized by the seller, whether the judgment be deemed as a bar to the action, or whether the former action abates the subsequent action.

Under Rev. Civ. Code, §§ 951, 1169, defining what operates as a transfer of title under an executory agreement for the sale of personalty, etc., a contract for the sale of cattle, which bound the seller to sell and deliver to the buyer at a designated place and time cattle described, and which required the buyer to receive the cattle at such place and time, and to pay a specified sum on presentation of the contract and the balance on delivery, was executory, and no title passed until the cattle were delivered to and accepted by the buyer, or an offer of the same had been made with intent to vest title in him.

A contract for the sale of cattle, stipulating that the seller agreed to sell and deliver at a designated place and time cattle described, and that the buyer agreed to receive the cattle at the time and place and to pay a specified sum on presentation of the contract and the balance at the place of delivery on certificate of his agent, etc., bound the buyer to pay the balance at the place and time of delivery, and he was not entitled to the possession of the cattle until such final payment was made.

An executory contract of sale and purchase of cattle called for their delivery at a designated time and place. The seller personally drove the cattle to the place in time, but the buyer was not there to receive them. Later a third person appeared, and the seller and the third person drove the cattle to another point, where a bank agreed to

pay the seller the price, take the cattle as security, and deliver them to the buyer on his paying the price. The seller refused to let his cattle go until he was paid. The buyer refused to pay the price. **Held,** that the buyer did not acquire any title or right of possession to the cattle.

Ordinarily the only remedy for a breach of contract to sell and deliver personalty is an action for damages sustained by the buyer, and he cannot ordinarily sue for specific performance.

(Opinion filed, February 10, 1909.)

Appeal from Circuit Court, Sully County. Hon. LORING E. GAFFY, Judge.

Action by George Lumley and others against Ira Miller and another. From a judgment for plaintiffs and from an order denying a new trial, defendants appeal. Reversed, with directions to enter judgment for defendants.

*Horner & Stewart,* for appellants.

A pledgee may sell or assign either the property or his interest in it to a bona fide purchaser, who will be allowed to hold the property until extinguishment of the original obligation. The purchaser under such circumstances succeeds to the rights of the original pledgee. If one purchases what he believes to be the absolute title, he should not for his mistake be denied the right of taking the property which the seller or pledgee could convey. It works no hardship upon the pledgor as against the substituted pledgee as all the rights he possesses against the original. Williams v. Ashe, 43 Pac. 595. This position of the California Court is made under the same identical statute as exists in the South Dakota Code. Section 2910 of the Civil Code of California is identical with Section 2038 of the Civil Code of South Dakota. Glidden v. Bank, 43 L. R. A. 737; Belden v. Perkins, 78 Ill. 449; Talty v. Bank, 93 U. S. 321; Jarvis v. Rodgers, 15 Mass. 389; Moffat v. Williams, 36 Pac. 914; Jones on Pledges, Secs. 420, 422, 423, 571, and 577; Rodgers v. Grothe, 58 Pa. St. 418; Davis v. Bigler, 62 Pa. St. 242; Lewis v. Mott, 36 N. Y. 400; Reardon v. Patterson, 47 Pac. 956; Story on Bailm., Secs. 311, 324 and 327; Brittan v. Bank, 124 Cal. 282; Tiedman on Sales, Sec. 316. A contract for the sale of goods for cash, payment and delivery are concurrent acts, and payment of the purchase money is a condition precedent to the purchaser's

right of possession of the goods." Emp. St. Type Foundry v. Grant, 21 N. E. 49; Robinson v. Thoma, 70 Pac. 240; Hilmer v. Hills, 70 Pac. 1080; Elgee v. Cotton cases, 22 Wall. 180; Lester v. East, 49 Ind. 588-592; Straus v. Ross, 25 Ind. 300; Tiedman on Sales, Secs. 206 and 207; Dougherty v. Fowler, 10 L. R. A. 314; Sanborn v. Shipherd, 60 N. W. 1089.

*Albert Gunderson,* for respondent.

It is claimed by plaintiffs that by reason of certain dealings and transactions of the said State Bank of Hannah with reference to said property, their pledgee's lien was destroyed and discharged and that the subsequent acts of said bank were wrongful and amounted to a conversion of the said chattels. That by reason of the said conversion, the plaintiffs were entitled to recover their property and had the choice of three remedies. First, to recover the thing itself by replevin. 18 Am. & Eng. Enc. of Law, 728. Second, where the pledge has been sold, to sue on assumpsit for the money received by the pledgee. Cushman v. Hayes, 46 Ill. 145. Third, to sue for damages for the conversion. Under our Civil Code, section 4330, "notwithstanding an agreement to the contrary, a lien or a contract for a lien transfers no title to the property subject to the lien." Sections 4325, 4321. A pledge is a lien. By section 4342, "wrongful conversion by the person holding the lien, extinguishes the lien thereon." Everett v. Buchanan, 2 Dak. 249; Story on Bailments, Sec. 325; Norton v. Baxter, 42 N. W. 865; Mitchell v. Roberts, 17 Fed. 776; Griggs v. Day, 32 Am. St. Rep. 726; Roberts v. Wilcox, 36 Conn. 426; Drake v. Cloonan, 99 Mich. 121. The assignment of a claim for which the assignor may have by law a specific lien before action, destroys the right to the lien, and a re-assignment thereof to the assignor will not revive the lien. Tewksbury v. Bronson & Folsom, 4 N. W. 749; Hammond v. Payton, 27 N. W. 72. A vendor's lien is not a specific absolute charge upon the property, and does not pass by a transfer of his claim for the purchase money and is not assignable. Baum v. Grigsby, 21 Cal. 172; First Nat. Bank v. Salem Mill. Co., 39 Fed. 89-95. Where both parties move for the direction of a verdict and there is evidence to sustain the verdict as directed, the decision of the Court will not be reviewed, although

the evidence is conflicting. Church v. Foley, 10 S. D. 74; Yankton Fire Ins. Co. v. Ry. Co., 7 S. D. 428; Grigsby v. Telephone Co., 5 S. D. 561.

CORSON, J. This is an action in claim and delivery, and, the judgment being in favor of the plaintiffs, the defendants have appealed.

In an additional abstract presented to this court by the plaintiffs and respondents, it is suggested that there is no bill of exceptions in this case for the reason that there is no indorsement on the purported bill of exceptions, that the same was filed in the office of the circuit court as a bill of exceptions; but no motion appears to have been made in the court below or this court to strike out the bill of exceptions or to strike the same from the abstract, and, as what purports to be the bill of exceptions appears to have been duly settled by the judge of the circuit court, we are inclined to take the view that the document purporting to be the bill of exceptions must be regarded and treated as such by this court.

The complaint is in the usual form, alleging that the plaintiffs are the owners and entitled to the possession of a certain lot of cattle described in the complaint, and which it is alleged were unlawfully detained by the defendants. The defendants in their answer deny plaintiffs' ownership and right of possession, plead the pendency of another action in the circuit court involving the ownership and right of possession of the plaintiffs to the same property, and also plead a judgment in favor of the defendants in an action by the same plaintiffs against the vendor of the defendants in favor of the said vendor and against the plaintiffs. The defendants also allege their ownership and right of possession of the property in controversy. The trial was commenced in the circuit court before the court and jury, and so proceeded therein until the close of all the evidence. At the close of all the evidence the defendants moved the court for the direction of a verdict in favor of the defendants, and thereupon the plaintiffs moved for a direction of the verdict in favor of the plaintiffs and against the defendants. At this stage of the proceedings the following stipu-

lation was entered into by counsel for the respective parties: "At this time it is agreed by and between the parties to this action and stipulated in open court that no question will be raised at any stage of the proceedings that a general verdict was not submitted to this jury upon all the issues in this case, and the court is allowed to submit only the question of the value of these cattle and determine the other questions as questions of law." The court thereupon instructed the jury to find the value of the property, which they found to be $1,185. Thereupon the following proceedings were had: "Pursuant to the stipulation made as above mentioned, the questions of law in this case were presented to the court; both parties appearing. * * * The honorable circuit court notified the defendants in said case that its decision would be for the plaintiffs." Thereupon the court proceeded to make findings of fact and conclusions of law and entered judgment thereon in favor of the plaintiffs and against the defendants. The purported findings of fact and conclusions of law coming on for hearing before the said court, the defendants objected to the court making any findings of fact and conclusions of law in said case, under the stipulation entered into, and filed their objections and exceptions; the exceptions of the defendants being as follows: "Come now the defendants, Ira Miller and Joseph Binder, and before the making and filing of any findings of fact and conclusions of law in this case, * * * but after the making of the opinion of the court, * * * and object and except to the making and filing of any findings of fact and conclusions of law, * * * on the ground that the court has no jurisdiction under and by virtue of the proceedings * * * and of the stipulations made at the close of the taking of testimony * * * by the attorneys for the respective parties to make and file any findings of fact and conclusions of law, * * * or to do anything else except to order a judgment * * * for either of the parties plaintiff or the parties defendant therein. * * *" Counsel for the defendants further objected and excepted to various portions of the opinion of the court delivered in the case, and also excepted, without waiving their objections, to the findings of the court and to its conclusions of law made thereon, and without waiving their objections they submitted findings and conclusions

to the court, and these being refused, counsel moved for a new trial upon various grounds, which motion was by the court also denied, to which the defendants duly excepted.

It is contended by the defendants that, by reason of the proceedings of the court in making findings of fact and conclusions of law thereon, there was a mistrial of the action, for the reason that the judgment is not supported by a verdict of a jury either general or special or by findings of fact and conclusions of law by the court authorized or consented to by the defendants. We are inclined to take the view that counsel for the defendants are right in their contention. It will be observed that the action was to recover the possession of personal property, in which action parties are entitled to a jury trial, that the case proceeded to trial before a jury, and that at the close of all the evidence the parties entered into the stipulation referred to. It will be observed that there is nothing in the stipulation authorizing the court to try the action or authorizing the court to make findings of fact and conclusions of law therein. Section 244 of the Revised Code of Civil Procedure provides: "An issue of law must be tried by the court or by the judge. An issue of fact for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived as provided in section 275. * * *" Section 275 provides: "Trial by jury may be waived by the several parties to an issue of fact in actions arising on contract, or for the recovery of specific real or personal property, with or without damages, and with the assent of the court in other actions, in manner following: * * * (2) By written consent, in person or by attorney, filed with the clerk (3) by oral consent in open court entered in the minutes."

The motion made for the direction of the verdict by counsel for the defendants was based mainly upon three grounds: (1) That the questions involved in this case had been tried and determined in a former action; (2) that another action was pending involving the same property; (3) that the undisputed facts proved that the plaintiffs were not the owners nor entitled to the possession of the property claimed by them. The action of the court in making findings of fact and conclusions of law thereon

was therefore very prejudicial to the defendants, as all that was waived by the defendants by the stipulation was the immediate decision of the motions and a verdict of the jury as to the rights of possession of the property, thereby apparently intending to give the court further time to pass upon the motions. The decision of the court upon the motions would have presented to this court the simple legal question as to whether or not the motion of the defendants should have been granted upon a review of all the evience by this court unembarrassed by any findings of fact or conclusions of law made by the trial court. The findings of the facts by the trial court therefore very materially changed the whole status of the case, and enabled the plaintiffs to present, and the defendants would be required to meet, a very different case from that which would have been presented had the trial court simply decided the defendants' motion for the direction of a verdict. The court was clearly in error in giving a construction to the stipulation evidently not intended by defendants' counsel, and which both under oath say was never agreed to; and further say that the case was never tried to the court in chambers or any other place, and that the only proceedings had before the trial court at any time or place were simply the arguments of counsel made to the trial court upon the questions of law involved in the case.

It will be observed that this statement on the part of counsel for the defendants fully accords with the terms of the stipulation, and that the stipulation is not subject to the construction which the learned trial court seems to have placed upon it, that it was thereby authorized to regard the trial as had before the court and as authorizing the court to proceed and make findings of fact and conclusions of law; but, eliminating from the record the unauthorized proceedings of the trial court in making findings of fact and conclusions of law and the subsequent proceedings thereon, we may regard the judgment as having been entered by the court in pursuance of the stipulation, and review the case in this court upon the theory that the judgment was so entered in accordance with the stipulation disregarding entirely all the proceedings in the case not authorized by the stipulation. Of course, in taking this view of the case the findings of the trial court and its conclu-

sions of law and subsequent proceedings thereon will be given no consideration in this decision.

In order to understand the questions presented by the defendants' motion for the direction of a verdict, it will be necessary to make a brief statement of the more important facts disclosed by the record which are undisputed. The plaintiffs, through Mr. Lumley, entered into a contract with one William Smith of Manitoba for the purchase of a number of head of cattle, the main part of which reads as follows: "Said Smith agrees to sell and deliver to said Lumley at Crystal City, Manitoba, on the 20th day of June, A. D. 1898, 55 head of calves, born during the year 1897, of the following kinds and conditions: * * * Said Lumley agrees to receive said calves at the time and place above named, and to pay for them * * * $500.00 on presentation of this contract, and balance of money to be paid at Crystal City, Manitoba, on certificate of said Lumley's agent at Portage La Prairie. Said Lumley also agrees to pay the said Smith a reasonable amount for driving said calves from Portage La Prairie to Crystal City in addition to the price of $3.75 for one hundred pounds." Smith failed to have the cattle at Crystal City on the day specified, and Lumley, having other cattle to ship from Manitoba, proceeded to ship the same, leaving directions to an agent in Manitoba to receive the cattle from Smith when they should be brought in and ascertain the amount that would be due him on the contract and ship the cattle to the plaintiffs at Pierre. Some four days after Lumley left Manitoba, the cattle arrived at Crystal City, where they were weighed and subsequently driven by said Smith and the, agent of the plaintiffs to the town of Hannah, in North Dakota, where they were shipped to Pierre, South Dakota, by the Bank of Hannah, which advanced to Smith the balance of the money due on his contract and received the cattle in pledge to secure the payment of such sum. The bank drew a draft for the amount and attached the same to the bill of lading made to itself and forwarded the same to the Bank of Commerce of Pierre. In shipping the cattle four head were retained at Hannah by the bank for the reason that there was not room in the car in which the cattle were shipped for these four animals, but in the draft drawn by the bank no reduction was made on ac-

count of those omitted animals, and when the draft was presented to Lumley for payment he refused payment of the same for the reason that the animals were not according to the contract, and that the draft was for too large an amount, and that all the animals were not shipped. The draft was therefore returned to the Bank of Hannah unpaid, and the cattle shipped were retained by the railroad company; the company not being authorized to deliver the cattle to the plaintiffs except upon the payment of the draft. While the cattle were thus in the possession of the railroad company, the plaintiffs instituted an action in claim and delivery against the railroad company and the Bank of Hannah for the possession of the cattle so shipped and took the same into their possession; but, upon the bank giving the usual redelivery bond, the cattle were returned to the possession of the bank or the railroad company. Upon the trial of that action verdict and judgment were entered in favor of the defendants, and no appeal was taken from that judgment. While this litigation was proceeding in the state court, an action was instituted in the United States District Court for the District of Dakota by the United States attorney for a violation of the custom laws in entering of these cattle at the United States Custom House in Hannah, and the cattle taken into custody by the United States marshal. That action was subsequently tried in the United States Circuit Court, resulting in a judgment in favor of the claimants of the cattle; but in our view of the case this proceeding in the federal court is not material in the decision of this case. Smith then authorized the Bank of Hannah to sell the cattle at private sale, as follows: "I, William G. Smith, of Portage La Prairie, do hereby agree that the State Bank of Hannah, N. D., shall sell and dispose of all the calves turned over to me, to wit, on June 28, 1898, as said State Bank of Hannah shall see fit, and renounce all claim to said calves in favor of the State Bank of Hannah, and agree that said bank shall sell and dispose of said calves at its pleasure and will." Thereupon they were disposed of by the bank to the defendant in this action, Joseph Binder; the said Miller having no interest in the cattle and was made a party defendant for the reason that the cattle had been placed in his possession as the agent of the United States marshal.

It is contended by the defendants that the judgment in the first action of claim and delivery, if not an absolute bar to this action, discloses the fact that there was another suit pending between these plaintiffs and the bank to recover possession of these same cattle of the said State Bank of Hannah, vendor of these defendants, and therefore this action cannot be maintained. It is contended by the plaintiffs, however, that, subsequently to the trial of the first action, the balance due on the Smith contract was tendered to the Bank of Hannah and refused by it, and that the bank disposed of the property at private sale, and thereby converted the same to its own use and therefore lost its lien upon the property as a pledgee and became liable to the plaintiffs for the property or .its value; but this contention is untenable, for the reason that there was no contractual relation between the plaintiffs and the bank and such a tender, even if one had been legally made, did not have the effect of transferring the title of the property and the right to possession of the same to the plaintiffs, and such a tender in no event could have greater effect than to authorize the plaintiffs to maintain an action for damages against the bank for its failure to deliver the possession of the property to them, a point not now necessary to decide.

We are therefore of the opinion that the judgment in the former case, in favor of the defendant bank, and in effect in favor of the vendor of the defendant Binder in the present action, constitutes a bar to the present action, or at least another action pending, which would abate the present action, as the plaintiffs were concluded by the judgment in the former action in favor of the bank, and the defendant Binder, being a vendee of the bank, was privy to the bank, and was therefore entitled to avail himself of the bar of that judgment or the pendency of that action. We speak thus guardedly in regard to the judgment being a bar or as constituting the pendency of another action for the reason that under our Code (section 568, Rev. Code Civ. Proc.) it is provided: "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment be sooner satisfied." And this court has thus far made no decision directly determining whether

or not a judgment can be pleaded as a bar or as the pendency of another action until the time for the appeal has expired, and we do not deem it necessary to determine that question in this action, for in either view of the case, whether we regard the judgment as one in bar or as constituting abatement of the present action, we are inclined to take the view that the defendants were entitled to a direction of the verdict in their favor. But assuming that the circuit court committed no error in denying defendants' motion for the direction of a verdict, on the ground that the former judgment costituted no defense either as a plea in bar or in abatement, we will proceed to discuss the other questions presented by the motion for the direction of a verdict.

It was contended on the motion for the direction of a verdict by the defendants that the plaintiffs never acquired the ownership of the property in controversy, nor any right to the possession of the same, for the reason that the cattle were never delivered to the plaintiffs, or to any agent of the plaintiffs, and that the only remedy of the plaintiffs, if they have any, is an action upon the contract against Smith for damages for a failure to deliver the cattle, and that therefore the court should have granted the mo-- tion on that ground. There is great force in this contention. The defendants moved for the direction of a verdict "upon the grounds that the undisputed evidence in this case shows that the plaintiffs have no ownership in the cattle in dispute in this case of any kind or character; that they are not the owners, nor do they have any special ownership or lien upon these cattle." Section 951 of our Revised Civil Code provides that: "Title is transferred by an exe- cutory agreement for the sale or exchange of personal property only when the buyer has accepted the thing, or when the seller has completed it, prepared it for delivery, and offered it to the buyer, with intent to transfer the title thereto, in the manner pre- scribed by the chapter upon offer of performance." Section 1169 of the chapter on Performance in the Civil Code provides: "The person offering a thing, other than money, by way of performance, must, if he means to treat it as belonging to the creditor, retain it as a depositary for hire until the creditor accept it, or until he has given reasonable notice to the creditor that he will retain it no

longer; and if, with reasonable diligence, he can find a suitable depositary therefor, until he has deposited it with such person." It will be observed that the contract in this case does not constitute a bill of sale, but is simply an executory contract, and that no title passed under it until the cattle had been delivered to and accepted by the plaintiffs, or an offer of the same had been made with intent to vest the title in the plaintiffs, as provided by the last section above quoted. It seems to us quite clear from the undisputed evidence in this case that no title to the cattle passed to the plaintiffs, for the reason that the cattle had never been delivered to the plaintiffs, the full purchase price paid, or been accepted by the plaintiffs.

It is claimed by the plaintiffs that the property was delivered to the agent of the plaintiffs, Cudmore, and Cudmore in a general way as a conclusion states that the property was delivered to him; but the transactions with Smith, as disclosed by the evidence, clearly show that the cattle were never in fact delivered to him as the agent of the plaintiffs, and the evidence therefore may be regarded as practically undisputed that the property was never delivered at any time to the plaintiffs or to their agent, and that the possession of the same remained in Smith until transferred by him to the bank, and that the bank retained possession of the same, and shipped the cattle to Pierre, to be delivered to the plaintiffs only upon the payment of the draft drawn by it on the plaintiffs for the money advanced to Smith as final payment for the cattle. It will be observed that by the contract the plaintiffs were to pay the balance due on the property at Crystal City, Manitoba, and the plaintiffs therefore were not entitled to the possession of the same under the contract until such final payment was made, and it seems to be conceded that the balance due Smith was never paid or tendered to him. It seems to be generally held by the courts that, upon a contract for the sale of personal property for cash, payment and delivery are concurrent acts, and payment of the purchase money is a condition precedent to the purchaser's right of possession of the goods. Sanborn v. Shipherd, 59 Minn. 144, 60 N. W. 1089; Elgee Cotton Cases, 22 Wall. 180, 22 L. Ed. 863; Robinson v. Thoma, 70 Pac. 240; Hilmer v. Hills, 138 Cal. 134,

70 Pac. 1080; Lester v. East, 49 Ind. 588-592; Tiedeman on Sales, §§ 206, 207; Straus v. Ross, 25 Ind. 300; Benjamin on Sales (2d Am. Ed.) § 592; Daugherty v. Fowler, 44 Kan. 628, 25 Pac. 40, 10 L. R. A. 314, and note.

The evidence of Smith is clear and specific that he did not deliver, and did not intend to deliver, this property to the plaintiffs, until the balance should be paid him on his contract. Smith, as witness on the part of the defendant, testified substantially as follows: "I drove the cattle personally from Portage La Prairie to Crystal City. I had wired Lumley twice while going, and expected to meet him at Crystal City and deliver to him the property. Lumley was not there, and I found nobody for some time after I arrived. After three or four hours one Aaron Cudmore came to me and said that Lumley left word that I should take the cattle down to Pierre, S. D. I said I wouldn't take the cattle any place until I got the money for them. Cudmore wanted me to turn the cattle over to him, and he would take the cattle to Pierre and get the money and bring it back to me. I told him I did not know him in this deal, and that I would not turn the cattle over to him or anybody until I got my money. I hired Cudmore and another man at the rate of $2 per day and expenses to drive the cattle to Hannah. The State Bank of Hannah agreed to give me the amount of money, $382.18, if I would turn the cattle over to them as security for it. I did so and received the money when I was there in the bank. I paid Cudmore and the man who was with him for driving the cattle from Crystal City to Hannah, and also paid him for going on with the cattle from Hannah to Pierre, S. D. It was part of the arrangement with the bank before they would give me the money that I would hire Cudmore to accompany the cattle to Pierre. The cattle were my cattle and in my possession, and had been since I bought them up to the time I turned them over to the Bank of Hannah as security for the money which was advanced to me. The Bank of Hannah then took possession of them. I never surrendered the possession of the cattle to any one at any time except the Bank of Hannah. I never intended to do so until I got my money, and did not recognize any one as having the right to take the possession of them until I got the rest of my

money, which I got by delivering the property to the Bank of Hannah to hold as security."

Mr. McMillan, the cashier of the bank, as a witness for the defense, testified, among other things, as follows: "Cudmore came into the bank alone. Said there was a party by the name of Smith who had a bunch of cattle that he was going to cross, and he (Smith) wanted to draw some money on them, and for me not to let Smith have any money on the cattle until he was there present; that there was a matter of driving over that he wanted to adjust with Smith before he got the money, and also that Smith owed him some money for certain work and money he had loaned him, and he wanted to be there to arrange these matters. I told him that I would not give Mr. Smith any money or let him have any money until he was present and should state he was satisfied in the matter. After detailing what occurred between the witness and Mr. Smith in regard to the loan, he said Cudmore asked me to add $48 that he and Mr. Smith had settled upon for driving. That left a balance of $382.18. I turned to Mr. Cudmore and asked if this amount was right. He said it was. After Smith turned the cattle over to me, he wanted to know if it would be all right for him to go down with the cattle. I told him 'No,' that I did not know him, and I would not have anything to do with the deal unless Mr. Cudmore would go with the cattle as caretaker to look after them. It was finally agreed that Smith was to pay Cudmore for his time going down and back. In all this conversation we had with reference to the cattle Smith said that he had them and that he was the owner. Cudmore was the first man who told me that Smith was the owner of the cattle. At the time of the negotiations when Smith said they were his cattle, and that he had them, Mr. Cudmore made no objection nor said anything to the contrary. Mr. Cudmore made no objection to any of the statements made by Smith that he (Smith) was the owner of the cattle and had them. Mr. Cudmore at no time during these negotiations, nor at any time afterwards, claimed that he had possession of these cattle there for himself or for any one.".

Mr. Cudmore, who claimed to be the agent of the plaintiffs, and who testified that he received from Smith the possession of the

cattle at Crystal City, on his cross-examination testified as follows: "Smith had not drawn for the balance due on the contract at the time I met him at Crystal City. He demanded the sum of three hundred forty odd dollars and the amount for driving the cattle across. When he demanded the money I told him that Lumley had told me that Smith was to draw on him for the balance at Portage. Smith said he had no money and could not go back without it. I offered him $100 out of my pocket of my own money, and told him that Mr. Lumley would send him the rest. He would not take it, but wanted it all. I made no effort to get him the money on the Manitoba side, and made no suggestions as to how or where he might get the balance due. I went with Smith over to Pilot Mound to see if he could draw on the cattle to draw for the balance he claimed due. I took my horse and rig and drove him over. He could not get the money at the bank at Pilot Mound. He then suggested Hannah, and stated that by shipping from Hannah he thought he could get the money from the bank there. I was not interested in his getting the money one way or the other. It was nothing to me. I offered to let him have $100 of my own money because he had not a dollar and could not pay his bills at Crystal City and pay his men that were helping him. I did that to help him out. Smith was a total stranger to me. I never saw him before. * * * I had nothing to do with the getting of the money. I never said a word. Mr. Smith got it himself, and he (Smith) said I had nothing to do with it. Mr. McMillan asked me if it was all right to give Smith the money. I told him it would be all right to give it to him—that is the $340 and expenses—and Mr. McMillan gave it to him in my presence. After Mr. McMillan gave him the money on the cattle, I loaded the cattle the next morning. * * * McMillan was very particular to talk the matter over and have a thorough understanding before he would give out the money. Mr. Smith and Mr. McMillan talked the thing over. I heard Mr. Smith say that he had the cattle, and that he was sure of his money, and that he had received $500, and that they were good for three hundred eighty-eight odd. I had no authority to give Smith the money. The money was given to Mr. Smith. * * * He had a man hired to go with the cattle by the

name of McArtney. He paid him $2 a day and expenses for helping to take the cattle from Crystal City to Hannah. He was a man that had been working for me previous to that. Smith paid me and McArtney for driving the cattle out of the money he received from the bank." In answer to the question: "You knew as a matter of fact that Smith was not going to let the cattle go until he got his money? A. I knew he said that." In answer to a question upon the cross-examination, "Were you ever authorized by Mr. Lumley or any other person to pledge these cattle to any person or for any purpose whatever?" He answered, "No. I knew when the cattle left Hannah that they were billed in the name of the Bank of Hannah, and that Mr. McMillan had shipped them to its credit, and that he had the bill of lading. I knew that Mr. Smith paid Mr. McArtney out of the money received from the Bank of Hannah. He paid him just as soon as he received the money. I knew that the bank had possession of the cattle when they arrived at Pierre."

It will be observed from the evidence that Smith paid Cudmore for assisting in the driving of the cattle from Crystal City to Hannah and paid him for going with the cattle from Hannah to Pierre and that Smith pledged the cattle to the bank for the amount of the balance due him in the presence of Cudmore without any objection on his part. It is quite clear therefore, notwithstanding the testimony of Cudmore on his direct examination that the cattle were delivered to him, he was merely stating his conclusions as to the transaction; but the facts as disclosed by the evidence both of Smith, McMillan, and the cross-examination of Cudmore show clearly that the property was never delivered to the plaintiffs or their agent, that it remained all the time in the possession and under the control of Smith until he transferred the possession to the bank, and that the bank thereafter retained possession of the cattle, except when they were in the possession of the United States marshal, until the same were delivered over to the defendant Binder, and, as before stated, the evidence was therefore practically undisputed that the plaintiffs never had the possession of these cattle and never were entitled to the possession of them as against Smith or the bank. The contract being executory, and there hav-

ing been no delivery of the cattle nor offer of the same to the plaintiffs, as provided in the two sections quoted, the plaintiffs acquired no title to the property and no right to the possession of the same. The tender to the bank, as above stated, did not have the effect to transfer the title of the property or the right to the possession to the plaintiffs, even if we assume that such a tender could under the circumstances have properly been made to the bank by the plaintiffs, and, had such a tender been made to Smith of the balance due on the contract, its effect would only have been to render him liable for damages for a breach of his contract.

In the analogous case of Graves v. Damrow, 28 Neb. 271, 44 N. W. 234, the learned Supreme Court of that state held that a delivery of personal property by a vendor to a vendee may be actual or symbolical, but it must be by some act indicating a purpose to pass the possession of the property, absolutely, to the vendee in order to entitle the vendee to maintain an action of replevin for its possession, and, where plaintiff tendered the amount unpaid and replevined the property, it was held that replevin would not lie. And in its opinion the court says: "It is true that there was some evidence that the trees and shrubbery were separated from others in the possession of plaintiff in error (defendant in the court below) and placed on one side, but there was no delivery, and until such delivery defendant in error (plaintiff in the court below) could not maintain an action in replevin. Barrett v. Turner, 2 Neb. 172; Goodman v. Kennedy, 10 Neb. 270, 4 N. W. 987. If plaintiffs in error had failed to comply with their contract in the delivery of the trees, the proper action for defendant in error was for damages for the nonperformance of the contract; his damages in such case being the amount paid with legal interest thereon. * * *" This view seems to be in accord with section 2341 of our Revised Civil Code, which provides as follows: "It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation, and that the breach of an agreement to transfer personal property can be thus relieved." While a tender in a case of breach of an agreement to convey real

property will authorize a party to maintain an action for specific performance of the contract, a breach of a contract to convey personal property ordinarily only gives a right of action for the damages that may be sustained by reason of such breach.

These views lead to the conclusion that the plaintiffs never had the title to said stock and had never acquired the right to the possession to it at the time this action was instituted. Upon the record therefore in this case the defendants' motion for the direction of a verdict in their favor should have been granted.

The judgment of the circuit court and order denying a new trial are reversed, and the circuit court is directed to enter judgment in favor of the defendants.

HANEY, P. J., taking no part in this decision.